**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ELLEN JANE KUTTEN,<br>individually, and on behalf<br>of her daughters<br><br>and<br><br>MARY ANN ARNOLD, ELSIE<br>MAHLER SCHARFF, JOHN F.<br>MEDLER, JR., MICHAEL R. MEDLER,<br>and JEFFREY P. MEDLER, on behalf of<br>themselves, and all others similarly<br>situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>BANK OF AMERICA, N.A.<br><br>and<br><br>BANK OF AMERICA CORPORATION,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 4:06 CIV 0937 (PAM)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS BANK OF AMERICA, N.A. AND**
**BANK OF AMERICA CORPORATION'S**
**MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO DISMISS**

Jeffrey S. Russell  #4232
Darci Madden #95927
BRYAN CAVE LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO  63102
Telephone:  314.259.2000

Gregory B. Jordan
Mary J. Hackett
Christopher J. Soller
Sharon L. Rusnak
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  412.288.3131

Counsel for Defendants

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

    A.    Procedural History - This Court's Dismissal of *Kutten I* ....................................... 2

    B.    The Allegations of the Class Representatives in *Kutten II* ..................................... 3

        1.    *Plaintiff Arnold* ........................................................................................ 3

        2.    *Plaintiff Scharff* ....................................................................................... 4

        3.    *The Medler Plaintiffs* ............................................................................... 4

    C.    Plaintiff Kutten's Individual Allegations and Claims ............................................. 5

ARGUMENT ............................................................................................................ 5

I.    The Claims of Elsie Scharff and the Medlers Must be Dismissed Because They Have Failed to Join Necessary and Indispensable Parties – the Co-Trustees of Their Trusts ..... 6

II.    The Complaint Should be Dismissed Because Plaintiffs Have Failed to State a Claim Upon Which Relief Can Be Granted ..................................................................... 7

    A.    Plaintiffs' Claims Under the Securities Act of 1933 (Counts I and II) Fail to State a Claim as a Matter of Law ....................................................................... 7

        1.    *Defendants are not subject to liability under Section 11* ........................... 8

        2.    *Plaintiffs lack standing to pursue claims under Sections 11 and 12* .......................................................................................... 10

            a.    *Plaintiffs lack standing to pursue claims under Section 11 because they fail to trace the challenged securities to the purportedly misleading registration statement* ................................................ 10

            b.    *Plaintiffs fail to allege that the securities were purchased pursuant to an initial offering as required under Section 12* ...................... 11

        3.    *Plaintiffs' claims under Sections 11 and 12(a)(2) are time-barred and have not been pled with the required specificity under Section 13* ...................................................................................... 12

        4.    *Plaintiffs have not alleged and cannot properly allege loss or harm compensable under the Securities Act* ...................................................... 13

    B.    Plaintiffs' Claims in Count III for Control Person Liability Under Section 15 of the Securities Act Should Be Dismissed ............................................................. 15

**Page**

C.   Plaintiffs' Claim Under the Exchange Act (Count IV) Should Be Dismissed Because it is Time-Barred and Because Plaintiffs Fail to Adequately State A Claim ............................................................................................................ 16

     1.   *Plaintiffs' Exchange Act claim is time-barred* ........................................ 17

     2.   *The alleged misrepresentations or omissions are not actionable under Section 10b* ............................................................................. 18

     3.   *Plaintiffs' Section 10b claim must be dismissed for failure to adequately allege scienter* ...................................................................... 20

         a.   *Plaintiffs' generic allegations of motive and opportunity fail to adequately establish scienter* ....................................................... 20

         b.   *Plaintiffs fail to adequately allege facts constituting evidence of conscious misbehavior or recklessness* ........................................... 22

     4.   *Plaintiffs fail to plead loss causation adequately* ................................... 23

D.   Plaintiffs' Claims for Control Person Liability Under Section 20(a) of the Exchange Act (Count V) Must Fail ........................................................ 25

E.   The Supreme Court Has Confirmed That Plaintiffs' Investment Advisers Act Claim (Count VI) Fails as a Matter of Law ............................................... 25

F.   SLUSA Mandates Dismissal of Plaintiffs' State Law Class Claims (Counts VII-XV) ........................................................................................................... 26

     1.   *Plaintiffs allege a covered class action* ................................................... 28

     2.   *Plaintiffs' claims are founded on state law* ............................................. 28

     3.   *The core allegations in Plaintiffs' Complaint are that Defendants misrepresented or omitted material facts* .................................................. 28

     4.   *Plaintiffs' claims are in connection with the purchase of a covered security* .................................................................................................... 30

         a.   *Plaintiffs' claims involve a covered security* ............................... 30

         b.   *The "in connection with" requirement is met in this case* ............ 30

     5.   *Plaintiffs' state law claims should also be dismissed because the challenged conduct is proper under state law* ......................................... 31

G.   Plaintiff Kutten's Individual Claims (Counts XVI-XX) Should be Dismissed .... 32

     1.   *The Bank did not breach its fiduciary duty to the Kutten trust when it invested trust assets in proprietary mutual funds* ..................................... 32

         a.   *There can be no breach of fiduciary duty where the Bank complied with the terms of the Kutten Trust Instrument* .............................. 33

         b.   *There can be no breach of fiduciary duty where the Bank complied with applicable Missouri law* ....................................................... 34

**Page**

2.  *Plaintiff Kutten has failed to state a claim for breach of contract as a matter of law* .......................................................................................... 35

3.  *Plaintiff Kutten's claim for unjust enrichment fails as a matter of law* .... 37

4.  *As a matter of law, neither the Bank nor BAC violated Chapter 456 of Missouri's Revised Statutes - Count XX should be dismissed* .................. 38

**CONCLUSION** ................................................................................................ 40

## <u>INTRODUCTION</u>

This is the ***eighth*** action and ***fifteenth*** complaint filed by Plaintiffs' counsel against Bank of America, N.A. (the "Bank") concerning its role as trustee for individual trust accounts. Plaintiffs' counsel has been shopping a series of baseless claims for nearly four years in four states before no fewer than ten judges.  When faced with adverse rulings or when forced to address the merits of their claims, Plaintiffs have voluntarily dismissed actions and have recycled plaintiffs only to re-file in another jurisdiction.  Indeed, Plaintiffs' counsel added additional Plaintiffs and re-filed the instant action less than one month after this Court dismissed <u>Kutten et al. v. Bank of America, N.A. et al.</u>, No. 04-0244 (PAM) (E.D. Mo. May 26, 2006) ("*Kutten I*") for lack of subject matter jurisdiction.  This Court ruled in *Kutten I* that after two years of discovery, Plaintiffs Arnold, Kutten and Scharff did not set forth a "scintilla of evidence" of any damage to prove the requisite amount in controversy.  In an attempt to cure the jurisdictional defects of their previous action, Plaintiffs' counsel has added newly-minted federal securities claims based on the same underlying allegations.

As outlined below, each of Plaintiffs' claims suffers numerous, fundamental defects and should be dismissed.  Initially, this Court should dismiss the claims brought by Elsie Scharff and the Medlers' because the action does not currently involve all necessary and indispensable parties.  As to the merits, recent authority provides numerous, independent grounds for dismissal of Plaintiffs' claims as a matter of law.  First, the federal securities claims are deficient on their face.  This Court can and should dismiss them with prejudice because Plaintiffs fail to plead the requisite damage and loss causation as required under the Securities Act of 1933 and the Exchange Act of 1934.  Moreover, no private right of action exists under the Investment Advisers Act.  Further, based upon a recent opinion from the United States Supreme Court and a recent district court case squarely on point, the Securities Litigation Uniform Standards Act preempts every state law class claim, mandating dismissal.  Finally, all of Plaintiff Kutten's individual claims fail as a matter of law.  Accordingly, all counts of the Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.**     **Procedural History – This Court's Dismissal of *Kutten I***

This is the second action filed by Plaintiffs Kutten, Arnold and Scharff against the Defendants.  In February 2004, Ellen Jane Kutten filed a putative class action against the Defendants, the Bank and Bank of America Corporation ("BAC").  Plaintiff Kutten originally filed that action on behalf of herself and her daughters, Louise and Alessandra, as well as on behalf of the putative class and a Missouri sub-class.  In the *Kutten I* complaint, Plaintiff Kutten alleged that Defendants breached various purported fiduciary and contractual duties with respect to the administration of her trust accounts.

In the Spring of 2004, a First Amended Complaint was filed in *Kutten I*, adding Mary Ann Arnold, a Nevada resident, as a named plaintiff on behalf of the putative class and a California sub-class.[1]  When various issues arose after a year of discovery, Plaintiffs moved for leave to amend their complaint a second time in March 2005.  In the Second Amended Complaint, Plaintiff Kutten withdrew as a class representative and instead sought to pursue claims against the Defendants individually.  Plaintiff Arnold, the remaining class representative, was then joined by Elsie Mahler Scharff, a Missouri resident, who asserted claims on behalf of herself as well as the putative class and Missouri sub-class.

Despite two years of burdensome discovery, Plaintiffs Kutten, Arnold and Scharff failed to set forth any evidence of damages to satisfy the amount in controversy.  Accordingly, Defendants moved to dismiss *Kutten I* for lack of subject matter jurisdiction.  Plaintiffs' counsel engaged in various maneuvers to delay the motion to dismiss, including filing a motion to intervene on behalf of John Medler.  Because Plaintiff Medler is the son of a federal magistrate judge in the Eastern District of Missouri, the motion to intervene precipitated the recusal of Judge Shaw, who had previously granted Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction in <u>Reinke et al. v. Bank of America, N.A., et al.</u>, (CAS) (E.D. Mo. December

---

[1]     Plaintiff Arnold had previously filed a putative class action on behalf of herself and others similarly situated in federal court in California in November 2003.  In that action, Ms. Arnold asserted the same causes of action asserted in this action.  After the Court expressed its skepticism to whether a class could be certified and set a tight briefing schedule, Ms. Arnold, through the same counsel here, promptly moved to voluntarily dismiss that action, which the Court granted.  Subsequently, Plaintiff Arnold refiled her claims, along with Plaintiff Kutten, in the *Kutten I* action in Missouri.

16, 2005).  *Kutten I* was transferred to this Court, which granted Defendants' Motion to Dismiss

for lack of subject matter jurisdiction in May 2006.  Less than one month after that ruling,

Plaintiffs' counsel re-filed the instant action (*"Kutten II"*) adding various federal securities law

claims and allegations.

### B.     The Allegations of the Class Representatives in *Kutten II*

#### 1.     *Plaintiff Arnold*

John J. Crowley, a resident of the State of California, established a trust pursuant to his

Last Will and Testament ("Crowley Trust") for the benefit of his granddaughter, Mary Ann

Arnold.  See Exhibit A, Crowley Trust Instrument.[2]  In his Will, he appointed the Bank as

trustee and directed that the Bank "shall manage the Trust Estate and may sell, lease for terms

either within or beyond the duration of the trust, loan, re-loan, invest and re-invest the Trust

Estate or any part thereof in any kind of property which men of prudence, discretion and

intelligence acquire for their own account, specifically including but not by way of limitation,

corporate obligations of every kind and preferred or common stock."  The Will also provided a

trust for Mary Ann Arnold that would consist of one-fourth of the Crowley Estate.  The Bank

continues to serve as trustee for the Crowley Trust and Ms. Arnold remains a customer of the

Bank.  Plaintiff Arnold has never sought the removal of the Bank as trustee of the Crowley Trust.

Following the death of John J. Crowley, the Bank invested one-fourth of the assets from

the Crowley Estate pursuant to the terms of the Crowley Trust for the benefit of Plaintiff Arnold.

These assets were invested in common trust funds until 2002 and in various Nations Funds

mutual funds from 2002 to the present.  Plaintiff Arnold alleges that she suffered monetary harm

through the investment into Nations Funds.

---

[2]     This Court may consider the documents attached hereto in ruling on the Motion to Dismiss.
Under Fed. R. Civ. P. 10(c), a defendant may introduce and the Court may consider pertinent documents
on a motion to dismiss if a plaintiff fails to attach the documents to the Complaint.  See, e.g., Enervations,
Inc. v. Minnesota Mining and Mfg. Co., 380 F.3d 1066, 1068 (8th Cir. 2004); Weiner v. Klais & Co.,
Inc., 108 F.3d 86, 89 (6th Cir. 1997) (citations omitted); 5A C. Wright & A. Miller, Federal Practice and
Procedure § 1327 (3d. ed. 2004).  Otherwise, a plaintiff with legally deficient claims could survive a
motion to dismiss simply by failing to attach a dispositive document.  Weiner, 108 F.3d at 89.  Thus, even
though Plaintiffs did not attach various documents pertinent to the issues here (such as their trust
instruments), this Court may consider those documents (which are attached hereto) in ruling on the within
Motion to Dismiss.  See also Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997).

### 2.    *Plaintiff Scharff*

Nicholas Scharff established the Nicholas Scharff Marital Trust and the Nicholas Scharff

Residuary Trust ("Scharff Trusts") pursuant to the Nicholas Scharff Revocable Trust Indenture.

See Exhibit B, Scharff Trust Indentures.  In the trust instrument, Nicholas Scharff appointed

several co-trustees:  the Bank, as corporate co-trustee; Pauli Scharff, his wife, as a co-trustee;

Charles Lowenhaupt, an attorney, as a co-trustee; and Edward Levis, Jr, a stockbroker, as a co-

trustee.  Plaintiff Elsie Mahler Scharff, one of Nicholas Scharff's three daughters, is a

beneficiary of the Nicholas Scharff Residuary Trust and a remainderman of the Nicholas Scharff

Marital Trust.[3]  The Bank no longer serves as corporate co-trustee of the Scharff Trusts and

Plaintiff Scharff has not been a customer of the Bank since January 2005.

Notably, when the Bank did administer the trust accounts for which Plaintiff Scharff is a

beneficiary from 1999 to 2005, these trust accounts were not invested in common trust funds and

accordingly did not participate in a common trust fund conversion as alleged in the Complaint.

After seeking and obtaining the approval for such investments from the various co-trustees

appointed by Nicholas Scharff, the assets of the Scharff Trusts were invested in various Nations

Funds from 1999 until the trust was transferred.

### 3.    *The Medler Plaintiffs*

Plaintiff John Medler and his brothers unsuccessfully attempted to intervene in the

*Kutten I* action, and are now named Plaintiffs in this action.  Therefore they are the only "new"

Plaintiffs to this case.  Mr. Medler and his brothers are the beneficiaries of various trusts

established pursuant to the Last Will and Testament of Francis B. Lubbe (the "Lubbe Trusts").

See Exhibit C, Medler Trust Indentures.  The Bank and Plaintiffs' mother, the Honorable Mary

Ann Medler, served as co-trustees of the Lubbe Trusts.  See Complaint ¶ 11.  As co-trustee,

Plaintiffs' mother signed authorizations regarding the investments in Nations Funds mutual

funds that her sons are now challenging.

---

[3]     Although the Complaint also alleges that Plaintiff Scharff is a beneficiary of the Pauli R. Scharff
Revocable Trust, this assertion is inaccurate.  Pauli Scharff, Plaintiff Scharff's mother, established a
grantor trust with the Bank; however, Plaintiff Scharff is not a beneficiary of that Trust.

### C.    Plaintiff Kutten's Individual Allegations and Claims

Joseph and Carolyn Kutten, Plaintiff Kutten's parents, established various trust accounts pursuant to three trust instruments: the Third Amendment and Restatement of the Joseph Kutten Indenture of Trust; the Third Amendment and Restatement of the Carolyn J. Kutten Indenture of Trust; and the Joseph Kutten and Carolyn J. Kutten 1989 Grandchildrens' Trust (the "Kutten Trusts").  See Exhibit D, Kutten Trust Indentures.  Plaintiff Ellen Jane Kutten is a beneficiary and/or co-trustee of these trusts.  Plaintiff Kutten's daughters, Louise and Alessandra, are beneficiaries of the Joseph Kutten and Carolyn J. Kutten 1989 Grandchildrens' Trust, for which Plaintiff Kutten also serves as the co-trustee.  The Kutten Trusts were transferred to a successor co-trustee in 2003 and are no longer administered by the Bank.  From 1997 to 2003, assets of the Kutten Trusts for which Plaintiff Kutten and her daughters are beneficiaries were invested in various Nations Funds with the approval of co-trustee, Plaintiff Kutten.

### ARGUMENT

As fully supported in the argument set forth below, Defendants' motion to dismiss should be granted on the following grounds:

- **All claims asserted by Plaintiffs Elsie Scharff and the Medlers** - Under Rule 12(b)(7), Plaintiffs Elsie Scharff and the Medlers have failed to join the co-trustees of their respective trusts – each of which are necessary and indispensable parties to this action;

- **Counts I and II** - Under Rule 12(b)(6), Plaintiffs' Securities Act of 1933 claim fails as a matter of law because: (1) Defendants are not subject to liability under the Act; (2) Plaintiffs fail to connect the challenged securities with the allegedly misleading registration statement; (3) Plaintiffs fail to allege that the securities were purchased pursuant to an initial offering; (4) they are time-barred and; (5) Plaintiffs fail to allege loss or harm compensable under the Act;

- **Count III** - Under Rule 12(b)(6), Plaintiffs' control person liability claim under Section 15 of the Securities Act fails as a matter of law because there is no independent basis for liability under that Act;

- **Count IV** - Under Rule 12(b)(6), Plaintiffs' Exchange Act claim fails as a matter of law because: (1) it is time-barred; (2) the omissions and/or misrepresentations are not actionable under the Exchange Act; and (3) Plaintiffs have failed to adequately allege scienter and/or loss causation.

- **Count V** – Under Rule 12(b)(6), Plaintiffs' control person liability claim under Section 20(a) of the Exchange Act fails as a matter of law because there is no independent basis of liability under that Act;

- **Count VI** – Under Rule 12(b)(6), Plaintiffs' Investment Advisers Act claim fails as a matter of law because Plaintiffs have not alleged that defendants are "investment advisers" within the meaning of that Act, and because no private right of action exists under the Act;

- **Counts VII-XV** – Under Rule 12(b)(6), all of Plaintiffs' state law class claims fail as a matter of law because they are preempted by the Securities Litigation Uniform Standards Act of 1998; and

- **Counts XVI-XX** – Under Rule 12(b)(6), all of Plaintiff Kutten's individual claims fail as a matter of law because: (1) there can be no breach of fiduciary duty where the Bank complied with the Kutten Trust Instrument; (2) there can be no breach of fiduciary duty where the Bank complied with Missouri law; (3) Plaintiff Kutten did not (and cannot) adequately allege a breach of contract, especially where the settlor's intent authorized the conduct in question; (4) Plaintiff Kutten failed to adequately allege a claim for unjust enrichment; and (5) because there can be no violation of Chapter 456 of Missouri's Revised Statutes where the Bank complied with the Kutten Trust Instrument.

## I.    The Claims of Elsie Scharff and the Medlers Must be Dismissed Because They Have Failed to Join Necessary and Indispensable Parties – the Co-Trustees of Their Trusts.

In a suit in federal court, to determine who constitutes an "indispensable party" in a particular case depends upon the substantive law of the state and requires an examination of the state law and the nature of the lawsuit.  See Baker v. Dale, 123 F. Supp. 364, 367 (W.D. Mo. 1954).  In making such a determination, Missouri courts examine "to what extent a judgment rendered in the person's absence might be prejudicial to that person or those already parties. . ." Mo. Sup. Ct. R. 52.04(b).  Missouri courts also consider the "nature of the relief requested and the interests adjudicated."  Nachbar v. Duncan, 114 S.W.3d 421, 424 (Mo. App. 2003).  "As a general rule in suits involving trust property both the trustees and the beneficiaries are necessary parties."  Roth v. Lehmann, 741 S.W.2d 860, 862 (Mo. App. 1987).

"The general rule is that, where there are two or more trustees in the case of a private trust, as distinguished from a public or charitable trust, all of whom have accepted and are exercising their office as trustees, their powers are undivided and they cannot act separately unless separate authority is given by statute or by the instrument creating the trust."  See Bitker v. Hotel Duluth Co., 83 F.2d 721, 723 (8th Cir. 1936).  Where two trustees hold property jointly, both trustees are necessary and indispensable parties to any action concerning the trust property. See id.

In this case, the individual co-trustees, Mrs. Scharff, Mr. Levis and Mr. Lowenhaupt for the Scharff trust, and Judge Medler for the Medler Trust, authorized, in writing, the investment into Nations Funds mutual funds, which Plaintiffs now challenge.  See, e.g., respective Co-trustee Authorizations, attached as Exhibits E & F.  Indeed, the co-trustees of the respective trusts collectively (pursuant to the terms of the trust instruments) approved or disapproved investment decisions and disbursements made with the trust assets during their tenure as co-trustees; and accordingly, must be parties to a lawsuit challenging such decisions.  All individual co-trustees have an interest in this action and could be prejudiced in future proceedings if not joined.  However, none of these co-trustees have been named as a defendant.  Under Missouri substantive law, to the extent that parties are indispensable, and the action cannot in good conscience proceed without them, the action must be dismissed.  See Missouri Rule 52.04(b).

## II.    The Complaint Should be Dismissed Because Plaintiffs Have Failed to State a Claim Upon Which Relief Can Be Granted.

When ruling on a Federal Civil Rule 12(b)(6) motion to dismiss, the Court may accept only the well-pled allegations in the complaint as true.  See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519 (1983).  The Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."  Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002).  Even accepting only the well-pled facts as true, if the Court determines that the plaintiff has failed to state a claim upon which relief can be granted, dismissal of the complaint is warranted.  As outlined below, each Count in the Complaint has fundamental defects warranting dismissal.

### A.    Plaintiffs' Claims Under the Securities Act of 1933 (Counts I and II) Fail to State a Claim as a Matter of Law.

Counts I and II of the Complaint are respectively brought pursuant to Sections 11 and 12 of the Securities Act of 1933 (the "Securities Act").  See Complaint ¶¶ 87 - 108.  To advance claims under these provisions of the Securities Act, plaintiffs must plead that the registration statement (Section 11) and the prospectus (Section 12) pursuant to which they purchased the

securities at issue contained an "untrue statement of material fact" or "omitted to state a material

fact required to be stated therein or necessary to make the statements therein not misleading."

See 15 U.S.C. §77k(a); 15 U.S.C. §77l(a)(2).  In the Complaint, Plaintiffs allege that the

Defendants and un-named members of the Nations Funds Trust Board violated Sections 11 and

12(a)(2) of the Securities Act because they "caused" registration statements and post-effective

statements to be filed with the SEC which contained prospectuses disseminated to members of

the Federal Securities Sub-Class, which "misrepresented material facts and omitted other

material facts."  See Complaint ¶ 89.

　　As outlined below, Plaintiffs' Securities Act claims suffer numerous fundamental defects.

Accordingly, Plaintiffs' claims in Counts I and II should be dismissed.

## 1.　*Defendants are not subject to liability under Section 11.*

　　The overriding purpose of Section 11 is to place an "unambiguous limitation on the

categories of persons or entities against whom a claim may be brought" and impose liability only

upon the parties with a direct role in a registered offering.  In re WorldCom Securities Litigation,

308 F. Supp. 2d 338, 342 (S.D.N.Y. 2004).  Accordingly, Section 11 imposes liability only upon

the following enumerated parties: the issuer of the securities; directors of the issuer; anyone who

signed the registration statement; underwriters of the issuer; and experts preparing or certifying a

false part of the statement.  See 15 U.S.C. §77k(a)(1) – (a)(5).

　　Plaintiffs have not pled that either of the Defendants fall into any one of the requisite

categories because, they cannot.  Rather, Plaintiffs attempt to overcome Section 11's

requirements by setting forth blanket allegations amounting to nothing more than legal

conclusions.  Complaint ¶103 (alleging that Defendants were either "underwriters, issuers,

offerors, solicitors of sales and or selling shareholders").  Such legal conclusions should not only

be ignored, but are insufficient to adequately state a Section 11 claim.[4]

---

4　　Plaintiffs' approach fails even the most basic notice pleading requirements of Rule 8.  Conley v.
Gibson, 355 U.S. 41 (1957).  For example, in Kennedy v. Nicastro, 503 F. Supp. 1116, 1122 (N.D. Ill.
1980), the Court found the practice of failing to specify which facts and which claims pertained to which
defendants unacceptable and held that "plaintiffs owe defendants the obligation to make a good faith
differentiation throughout the complaint that will enable each defendant to know with what he or it is
charged and to what he or it must make answer." (emphasis added).

Moreover, neither of the Defendants, as a matter of law, satisfies one of Section 11's requisite categories. Only the Bank had a relationship with Plaintiff as trustee for the Plaintiffs' trust accounts. However, as a matter of law, the Bank as trustee for the Plaintiffs' trust accounts is neither an underwriter nor an issuer subject to liability under Section 11. See, e.g., Zicklin v. Breuer, 534 F. Supp. 745 (S.D.N.Y. 1982) (bank that purchases shares of a corporation's stock for its customers' accounts is not liable as an underwriter, for example, under Section 11 of the Securities Act). Moreover, Plaintiffs offer no facts to show a nexus between the Bank's actions as trustee for the trust accounts and the purportedly misleading registration statements.

The allegations of liability based on BAC's status as a holding company and its relationship as a parent company to various subsidiaries are likewise inadequate. The Complaint attempts to hold BAC and the Bank liable under Section 11 "through" the acts of various subsidiaries. Plaintiffs' Section 11 claims are premised on vague assertions that the Defendants "*caused*" the challenged Registration Statements to be filed and shares of Nations Funds mutual funds to be issued "*through*" controlled persons. See Complaint ¶¶ 103, 104. However, there is no legal basis for such an "enterprise" theory of liability for a Section 11 claim. In re WorldCom, Inc. 308 F. Supp. 2d at 345 (dismissing Section 11 claim based on company's status as parent of actual underwriter of security at issue).

Courts have recognized that "[i]t is a general princip[le] of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." Id. (citations omitted). The Court in In re WorldCom, Inc. dismissed similar allegations that various holding company defendants were liable under Section 11 "through" the acts of a subsidiary that directly underwrote the security offerings at issue. 308 F. Supp. 2d at 341. Similarly, Plaintiffs' attempted "enterprise" theory of liability here fails to state a claim under Section 11, particularly where the Complaint is devoid of *any* factual assertions that any of the Defendants were actual underwriters of the securities at issue. Plaintiffs have failed to plead that BAC, based on its ownership or control of any of the subsidiaries, had any role in the underwriting process.

- 9 -

Because neither of the Defendants is subject to liability under Section 11 and because the Complaint fails to set forth any facts supporting these conclusory and vague allegations, Plaintiffs' Section 11 claim fails as a matter of law.

> **2.**     ***Plaintiffs lack standing to pursue claims under Sections 11 and 12.***

> > **a.**     ***Plaintiffs lack standing to pursue claims under Section 11 because they fail to trace the challenged securities to the purportedly misleading registration statement.***

To state a claim under Section 11, Plaintiffs bear the burden of satisfying Section 11's statutory standing requirements.  Kirkwood v. Taylor, 590 F. Supp. 1375 (D. Minn. 1984), aff'd, 760 F.2d 272 (8th Cir. 1985) (to invoke Section 11, plaintiffs must meet its strict procedural standing requirements).  The most significant of the procedural standards is the requirement that a plaintiff be able to trace the security for which damages are claimed to the specific registration statement at issue.  Krim v. PCOrder.com, 402 F.3d 489 (5th Cir. 2005) (dismissing Section 11 claims because standing provisions limit putative plaintiffs to narrow class of persons consisting of those who purchase securities that are the direct subject of the prospectus and registration statement).  Under Section 11, "Congress conferred standing on those who *actually* purchased the tainted stock, not on the whole class of those who *possibly* purchased tainted shares." Id. at 500 (emphasis in original).

Where a plaintiff is unable to make a direct connection between the securities at issue and the challenged registration statement, dismissal is proper.[5]   For example, in Kirkwood, the Court held that plaintiffs lacked standing under Section 11 because they failed to "trace" the shares of the securities for which damages were claimed to the offering under the registration statement alleged to be false and misleading.  590 F. Supp. at 1378; Lee v. Ernst & Young, LLP, 294 F.3d 969 (8th Cir. 2002) (discussing standing requirements under Section 11 and holding that aftermarket purchasers have standing ***so long as*** the security was indeed issued under the allegedly defective registration statement and not another).

---

[5]     See Lorber v. Beebe, 407 F.Supp. 279 (S.D.N.Y. 1975) (dismissing Section 11 claim where Plaintiff could not demonstrate whether the challenged securities were sold pursuant to the challenged registration statement); Barnes v. Osofsky, 373 F.2d 269, 273 (2d Cir. 1967) (limiting Section 11 to purchasers of securities that were acquired through the registration statements).

Here, Plaintiffs' Section 11 claims should be dismissed because they likewise lack standing and fail to satisfy the procedural requirements of Section 11. Plaintiffs fail to trace the securities at issue to the challenged registration statements. Plaintiffs challenge ***only*** the registration statement purportedly filed on December 30, 2005, and include vague allegations to "other dates relevant hereto." See Complaint ¶¶ 90, 94. However, the Complaint appears to challenge purchases of shares of Nations Funds mutual funds for the Plaintiffs' Trusts "throughout the Class Period," defined as "September 8, 1998 to the present." See Complaint ¶¶ 40, 41, 79. On its face, such disjointed pleading fails to trace any of the securities sold in 1998 and throughout the class period to the challenged registration statement issued in 2005 or otherwise. See Complaint ¶ 79 (class period begins at time of exchange of investments to affiliated mutual funds). It is obvious that purchases of Nations Funds mutual funds in 1998 or others throughout the class period could not be traceable to a purportedly defective registration statement in 2005.

Moreover, to the extent the Complaint is challenging the December 30, 2005 registration statement, Plaintiff Scharff and the Medler Plaintiffs lack standing because they did not purchase any Nations Funds mutual funds pursuant to that registration statement. The Scharff Trusts were not even administered by the Bank during or after the allegedly defective registration statement was issued in December 30, 2005. Indeed, the Bank no longer serves as corporate co-trustee of the Scharff Trusts and Plaintiff Scharff has not been a customer of the Bank since January 2005. Clearly, any challenged purchases of Nations Funds mutual funds for the Scharff Trusts are not traceable to the December 30, 2005 registration statement. Likewise, the Medler Trusts have not been invested in any Nations Funds mutual funds since 2004. Because the Plaintiffs have failed to trace the challenged securities to the purportedly misleading registration statements, Plaintiffs lack standing and have not pled a viable claim under Section 11.

> **b.   *Plaintiffs fail to allege that the securities were purchased pursuant to an initial offering as required under Section 12.***

Section 12(a)(2) of the Securities Act applies only to sales by a prospectus of newly issued stock in a public offering and not to secondary trading in aftermarket transactions.

- 11 -

Gustafson v. Alloyd Co., Inc, 513 U.S. 561 (1995); Ballay v. Legg Mason Wood Walker, Inc.,
925 F.2d 682 (3d Cir. 1991) (holding that Section 12(a)(2) applies only to initial offerings and
not to aftermarket trading), cert. denied, 502 U.S. 820 (1991).  Plaintiffs fail to allege that the
Section 12(a)(2) claims are pursuant to any initial offerings of the Nations Funds mutual funds.
Instead, Plaintiffs rely on vague and conclusory allegations which fail to state a claim under
Section 12(a)(2).  See Complaint ¶108.  Because Plaintiffs fail to allege that the challenged
securities were purchased pursuant to an initial offering as opposed to aftermarket trading, the
Section 12(a)(2) claims should be dismissed.

> **3.**      *Plaintiffs' claims under Sections 11 and 12(a)(2) are time-barred and
> have not been pled with the required specificity under Section 13.*

Counts I and II should also be dismissed because Plaintiffs have failed to adequately
plead that they are within the applicable statute of limitations, indeed they are not.  Claims under
Sections 11 and 12(a)(2) are subject to the statute of limitations set forth in Section 13 of the
Securities Act of 1933, requiring claims be brought "within one year after the discovery of the
untrue statement or the omission, or after such discovery should have been made by the exercise
of reasonable diligence."  15 U.S.C. §77m.  Section 13 also provides that "in no event" shall
claims be brought more than three years after the relevant offering or sale of securities.  See id.;
Bull v. American Bank & Trust Co. of Pa., 641 F. Supp. 62 (E.D. Pa. 1986) (holding that three
year limitations period is absolute, equitable considerations notwithstanding).

In addition, Section 13 not only sets the time limitations for Section 11 and 12 claims, but
also imposes affirmative pleading requirements, outlining what a plaintiff must plead with regard
to those statutes of limitations.  To comply with Section 13, a plaintiff must plead with
specificity "the actual date of purchase of [the] investments, the time and circumstances of the
discovery of the alleged fraudulent statements, and the reasons why discovery was not made
earlier."  Davidson v. Wilson, 973 F.2d 1391, 1402 and n.8 (8th Cir. 1992) (affirming dismissal
of Section 12 claim where plaintiffs failed to plead compliance with Section 13 with specificity).
Thus, compliance with Section 13's affirmative pleading requirement is "substantive" and
essential and dismissal is required when such allegations are lacking.  Id.

Applying these principles here, Plaintiffs' claims are untimely for both reasons - because they fail to fulfill the pleading requirements and (even if they had fulfilled those requirements) the claims have expired.  Plaintiffs fail to fulfill the pleading requirements because they fail to assert specific or actual dates of purchases in the Complaint as required under Section 13.  Rather, Plaintiffs merely assert conclusory statements that the Securities Act claims are timely.  See Complaint ¶¶ 88, 108(D).  Despite this legal conclusion, Plaintiffs do not explain the time and circumstances of their "purchases," when they discovered the alleged misrepresentations and/or omissions or why discovery was not made earlier.  Furthermore, no explanation is provided regarding why these allegations, stemming from the exchange of common trust funds for Nations Funds mutual funds alleged as occurring in and around 1998, 1999 or 2000, were not raised in *Kutten I.*

The reason Plaintiffs fail to comply with Section 13's pleading requirements regarding the statute of limitation is quite simply because they cannot – their claims are untimely.  The purchase of Nations Funds mutual funds on behalf of Plaintiffs commenced no later than with the exchange of common trust funds, alleged as beginning as early as 1998.  See Complaint ¶¶ 36, 40, 79.  In addition, the Complaint attempts to tie the Securities Act allegations to letters received by certain Plaintiffs in 1999.  See id.¶ 41.  Regardless of which year is selected, Plaintiffs' claims are no doubt being brought more than three years after the relevant offering or sale of securities.  As such, the claims are time-barred and should be dismissed.

### 4.     *Plaintiffs have not alleged and cannot properly allege loss or harm compensable under the Securities Act.*

Plaintiffs' claims as alleged in Counts I and II for violations of Sections 11 and 12(a)(2) are also subject to dismissal because they fail to allege facts demonstrating that Plaintiffs have suffered harm within the meaning of either Section.  Where a plaintiff fails to satisfy the fundamental element of damage or loss required under the securities laws, such claims must be dismissed.  In re Salomon Smith Barney Mutual Fund Fees Litigation, No. 04-Civ. 4055 (PAC), 2006 WL 2085979 (S.D.N.Y. July 26, 2006) (dismissing securities claims with prejudice for failure to establish loss causation).

- 13 -

Under Section 11, there is only *one* measure of damages, and it should be readily calculable in a legitimate and properly pleaded claim:

> [T]he difference between the amount paid for the security . . . and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security . . . and the value thereof as of the time such suit was brought.

15 U.S.C. §77k(e).[6] The existence of recoverable damages is an element of a Section 11 claim. The absence of loss causation is also an affirmative defense to a Section 11 claim under the Securities Act of 1933. In re Salomon Smith Barney, 2006 WL 2085979, at *6-7. "[A] plaintiff must plead facts demonstrating that he suffered the particular type of injury contemplated by the statute." In re Mutual Funds Investment Litig., 384 F.Supp. 2d 845, 866 (D.Md. 2005) (citing Metz v. United Counties Bancorp, 61 F. Supp. 2d 364, 378 (D.N.J. 1999)).

Plaintiffs' Section 12(a)(2) claims should be dismissed for the same reasons. "Although the statutory language of Section 12(a)(2) is different, the effect is the same." In re Mutual Funds Investment Litig., 384 F. Supp.2d at 866. Under Section 12(a)(2) there are *two* alternative remedies: (1) rescission upon plaintiffs' prompt tender of shares in exchange for the original purchase price, or (2) restitutionary damages if plaintiff has sold his shares. Id. citing 15 U.S.C. §77l(a)(2). As under Section 11, "if a plaintiff sells the securities at issue for an amount greater than the plaintiff's purchase price, then the plaintiff has suffered no [recoverable] damages." Id. at 866 (citation omitted).

Plaintiffs' allegations fail to properly allege damages under Section 11 or 12. Indeed, Plaintiffs can only assert that they were damaged "in an amount which cannot presently be determined." Complaint ¶ 107. The Complaint is otherwise silent with respect to specific losses or harm as a result of the alleged violations of either Section. See Complaint ¶ 108. In other words, Plaintiffs fail to allege that they have sold shares for an amount *less* than the

---

6        Of course, Plaintiffs would have to prove that "any difference between the price paid and the later lower value or price – whether at sale or at the time of suit – [is] attributable to the misrepresentation and not depreciation resulting from some other cause, such as a general downtrend in the market." In re Mutual Funds Investment Litig., 384 F. Supp.2d 845, 866 (D. Md. 2005).

purchase price or were otherwise damaged – an element required of both Sections 11 and 12(a)(2). Plaintiffs' conclusory pleading is insufficient and fails to allege the requisite recoverable damages under either Section 11 or Section 12(a)(2).

Indeed, the Court in <u>In re Salomon Smith Barney</u> recently addressed similar allegations, or lack thereof, and held that the plaintiffs failed to sufficiently plead loss causation with respect to Section 11 and 12 claims. In that case, plaintiffs alleged that the defendants "improperly directed" them into affiliated mutual funds that provided lower returns and charged higher expenses. <u>See</u> <u>In re Salomon Smith Barney</u>, 2006 WL 2085979, at *6-7. In analyzing the plaintiffs' complaint, the Court noted that plaintiffs did not allege *why* they purportedly were damaged or lost money on the challenged investments in affiliated mutual funds. Indeed, the Court observed that the plaintiffs did not allege even that they in fact lost money (i.e., that the mutual fund share price dropped and that it dropped for the precise reason complained of). <u>Id</u>. at *8 (emphasis added).

Because Plaintiffs have not adequately pled any factual basis for damages under either Section 11 or Section 12(a)(2), or for rescission under Section 12(a)(2), these claims should be dismissed.

### B. Plaintiffs' Claims in Count III for Control Person Liability Under Section 15 of the Securities Act Should Be Dismissed.

Section 15 of the Securities Act imposes liability on those who control any person that violates Section 11 or 12. <u>See</u> 15 U.S.C. §77o. However, Section 15 of the Securities Act does not provide an independent basis for liability. Rather, Section 15 imposes liability on those who "controlled" any person liable for a primary violation of the Securities Act. <u>See</u> 15 U.S.C. §77(o).

Throughout the Complaint and particularly in Count III, Plaintiffs include allegations of control person liability. However, regardless of these allegations, because Plaintiffs have failed to state a claim against either Defendant for a primary violation of the federal securities laws, the claims for control person liability necessarily fail. <u>See, e.g.</u>, <u>Parnes v. Gateway 2000, Inc.</u>, 122 F.3d 539, 550 (8th Cir. 1997) (where plaintiffs presented no actionable claim for violation of

Section 11 or 12, or Section 10(b), the claims for controlling person liability were properly dismissed); In re Mutual Funds Investment Litig., 384 F. Supp.2d at 867 n. 21 (plaintiffs' claims under Section 15 failed); Klein v. General Nutrition Companies, Inc. 186 F.3d 338, 344 (3d Cir. 1999) (holding that controlling person liability under Section 15 hinges on liability under either Section 11 or 12).

> ### C. Plaintiffs' Claim Under the Exchange Act (Count IV) Should Be Dismissed Because it is Time-Barred and Because Plaintiffs Fail to Adequately State A Claim.

Count IV of Plaintiffs' Complaint attempts to set forth a cause of action for violation of Section 10b of the Exchange Act and Rule 10b-5 promulgated thereunder (collectively referred to as "Section 10b"). Section 10b of the Exchange Act of 1934 is intended to prohibit fraudulent conduct in the sale and purchase of securities. See 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5. Specifically, Rule 10b-5 provides that it is unlawful for any person, directly or indirectly:

> (a)    To employ any device, scheme, or artifice to defraud,
>
> (b)    To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c)    To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. To have standing to bring a Section 10b claim, a plaintiff must set forth and eventually prove six elements: (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) upon which the plaintiff relied; (5) resulting in economic loss; and (6) loss causation. See Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341- 42 (2005); In re Navarre Corp. Securities Litig., 299 F.3d 735, 741 (8th Cir. 2002).

Importantly, each of these six elements is subject to special pleading standards adopted by Congress in the Private Securities Litigation Reform Act ("Reform Act"). In re Navarre Corp. Securities Litig., 299 F.3d at 741. "These pleading standards are unique to securities and were adopted in an attempt to curb abuses of securities fraud litigation." Id. Specifically, to

- 16 -

state a claim under Section 10b of the Exchange Act, plaintiffs must satisfy not only Rule 9(b) specificity, but also the heightened pleading standards set forth in the Reform Act.  The Reform Act, like Rule 9(b), requires that plaintiffs identify the misleading statements or omissions made by ***each*** defendant and explain why ***each*** statement or omission was misleading.  See 15 U.S.C. § 78u-4(b)(1); In re Royal Ahold, 351 F. Supp. 2d 334, 368-69.

Given Section 10b's strict pleading requirements, even if one accepts all of the facts set forth by Plaintiffs as true, Plaintiffs' Section 10b claim should be dismissed for multiple reasons. First and most simply, it is time-barred by the applicable statute of limitations.  Second, the omissions and/or misrepresentations set forth in the Complaint are not actionable under Section 10b.  Third, even if Plaintiffs' allegations were actionable under Section 10b, their claim fails as a matter of law because they cannot adequately plead scienter and/or loss causation.

Therefore, despite Plaintiffs' attempts at overwhelming the Court with repetitive and conclusory allegations along with inappropriate causes of action, to essentially cross their fingers to "see what sticks," Plaintiffs do not have a Section 10b claim, and even if this were a proper action for a Section 10b claim, it is inadequately pled.  Count IV should be dismissed as a matter of law.  As noted by the Eighth Circuit, the special and stringent pleading standards for Section 10b claims were adopted by Congress "in an attempt to curb abuses of securities fraud litigation."  In re Navarre, 299 F.3d at 741.  This is precisely what Plaintiffs are trying to perpetrate here.

### 1.    *Plaintiffs' Exchange Act claim is time-barred.*

Plaintiffs' Section 10b claim should be dismissed because it was filed after expiration of the applicable statute of limitations.  The statute of limitations for a Section 10b claim was recently clarified by the Sarbanes-Oxley Act.  Under that Act, an action for securities fraud must be brought not later than the earlier of either ***two*** years after the date the facts constituting the violation are discovered or ***five*** years of the violation.  28 U.S.C. § 1658(b); ADC Telecommunications, Inc. Securities Litig., 409 F.3d 974, 976-77 (8th Cir. 2005).

In this case, although it is unclearly pled, Plaintiffs explain that the investments involving the alleged omissions which constitute the basis of their Section 10b claim began "some time

prior to 1998."  Complaint ¶ 36.  Indeed, Plaintiffs seek to certify a class defined by members who invested in Nations Funds anytime as far back as September 8, 1998.  Complaint ¶ 79. However, Plaintiffs' Complaint was not filed until June 6, 2006 – fully eight to nine years after the alleged violation of the Exchange Act.  Such a lapse of time is in excess of both limitations placed upon Section 10b claims.  Plaintiffs' Section 10b claim is therefore expired and should be dismissed.[7]

### 2. *The alleged misrepresentations or omissions are not actionable under Section 10b.*

Beyond being filed after expiration of the applicable statute of limitations, Plaintiffs' Section 10b claim faces another fundamental problem.  Simply stated, even accepting Plaintiffs' allegations as true (which they are not) those allegations amount to claims of simple mismanagement, not fraud.  "Section 10(b) and Rule 10b-5 were not intended to bring within their ambit simple corporate mismanagement or every imaginable breach of fiduciary duty in connection with a securities transaction.  The gravaman of a s 10(b) and Rule 10b-5 cause of action is fraud, viz. manipulation or deception."  St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 562 F.2d 1040, 1048 (8th Cir. 1977).  As the Eighth Circuit has explained:

> [t]he reasoning behind limiting section 10(b) and Rule 10b-5 to instances of actual fraud is clear.  If they were not so limited, every instance of broker misconduct would give rise to a cause of action under the anti-fraud provisions of the federal securities laws. Indeed, violation of any law by anyone connected with a securities transaction would give rise to a section 10(b) cause of action.

Forkin v. Rooney Pace, Inc., 804 F.2d 1047, 1050 (8th Cir. 1986); Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 477 (1977) ("we do not think [that Congress] would have chosen this 'term of art' [manipulation] if it had meant to bring within the scope of s 10(b) instances of corporate mismanagement…in which the essence of the complaint is that shareholders were treated

---

7       Moreover, even if Plaintiffs attempt to claim that the investments involving the alleged misrepresentations took place sometime after 1998, Plaintiff Arnold's Section 10b claim is nevertheless time-barred.  As explained *supra*, this is not the first time that Ms. Arnold has asserted these claims.  To the contrary, in Spring of 2004 she joined in the *Kutten I* action which was based on the very same facts. Therefore, by Spring of 2004 (or more than two years prior to the filing of this action) Plaintiff Arnold was no doubt aware of the facts giving rise to her claims.  Plaintiff Arnold's Section 10b claim has accordingly expired and should be dismissed.

unfairly by a fiduciary.").  Indeed, for an omission or misrepresentation to be actionable under Section 10b, there must be both fraud and a causal link between the misrepresentation and the harm incurred when the security is purchased or sold.  See Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. at 341-42.

For example, in Gannon, the plaintiff attempted to set forth a Section 10b claim based upon the defendant's alleged mismanagement of reserves.  Gannon v. Continental Ins. Co., 920 F. Supp. 566, 579 (D. N.J. 1996).  In that case, the plaintiff based his Section 10b claim upon the corporation's statements regarding its ability and duty to establish reserves.  Id. at 576. According to the plaintiff, the corporation made misrepresentations to disguise the fact that decisions were made because management wanted to take their bonuses.  Id. at 579.  The court, however, saw through the plaintiff's arguments and recognized that the corporation had disclosed both its reserves and compensation policy.  Id.  The only thing not disclosed was the motivation behind those policies.  Id.  Such motivation, according to the court, "represents a failure to disclose breach of fiduciary duty and mismanagement… [but was] not actionable under federal securities laws" because it lacked a connection to the alleged harm.  Id. at 579; see also Biesenbach v. Guenther, 588 F.2d 400, 402 (3d Cir. 1978) ("[A]ppellants are stating that the failure to disclose the breach of fiduciary duty is a misrepresentation sufficient to constitute a violation of the Act.  We refuse to adopt this approach.").

Similarly, in this case each of the alleged misrepresentations and/or omissions upon which Plaintiffs base their Section 10b claim have to do with the motivation and consideration given to the decision to close common trust funds and utilize Nations/Columbia Funds.  See, e.g., Amended Complaint ¶ 111 at p. 43.[8]  However, the misrepresentations and/or omissions have nothing to do with the damages that Plaintiffs allegedly suffered as a result of the purchase of the Funds.  Under the law, this disconnect represents the failure of Plaintiffs' Section 10b claim. Gannon, 920 F. Supp. at 579; Craftmatic Securities Litigation v. Kraftsow, 890 F.2d 628, 639

---

[8]     Plaintiffs complain that they were not informed about the "operation of the Bank's fiduciary accounts," "as to the manner in which the Nations/Columbia Funds were operated and selected," "the manner in which vendors of investment advisory and other services were selected" and the "excessive expenses to be borne by the Bank's fiduciary accounts."  Complaint ¶ 111 at p. 43.

(3d Cir. 1989) ("The line between a material nondisclosure of mere mismanagement is often difficult to draw…However, courts have been reluctant to permit a federal securities claim to stand when the plaintiff has failed to allege more than mere nondisclosure of mismanagement."). Plaintiffs' Section 10b claims should be dismissed.

### 3.       *Plaintiffs' Section 10b claim must be dismissed for failure to adequately allege scienter.*

The Reform Act, like Rule 9(b), also requires specific pleading of facts showing that each defendant acted with scienter. In re Navarre Corp. Secs. Litig., 299 F.3d at 743.  In particular, the Reform Act requires that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a ***strong inference*** that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2) (emphasis added). Congress enacted this more stringent pleading standard "to curtail the filing of meritless lawsuits" and to create a uniform pleading standard among the circuits.  See H.R. Conf. Rep. No. 104-369, at *41 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 740; Ottmann v. Hanger Orthopedic Group, Inc., 353 F.3d 338, 344 (4th Cir. 2003).

Circuit courts are split as to the meaning of the "strong inference" pleading standard and what it means in terms of the level of particularity now required to sufficiently plead scienter under the Reform Act.  In re Navarre Corp. Secs. Litig., 299 F.3d at 745.  According to the Eighth Circuit, no one test applies to determine scienter.  Id.  Rather, various tests and criteria must be applied looking for the "badges of fraud."  Id.  Chief among those criteria, the Eighth Circuit pays special attention to allegations of unusual or heightened motive and opportunity, and/or allegations of intentionally reckless behavior.  In re Gander Mt. Co. Sec. Litig., No. Civ. 05-183DWFAJB, 2006 WL 140670, at *7 (D.Minn. Jan. 17, 2006); In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 894 -95 (8th Cir. 2002) (scienter generally means the intent to deceive, manipulate, or defraud.).

### a.       *Plaintiffs' generic allegations of motive and opportunity fail to adequately establish scienter.*

Plaintiffs' allegations of scienter fail as a matter of law because they rely upon generic, not particular, allegations.  As the Second Circuit as noted: "[A] generalized motive, one which

could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter". See Chill v. Gen. Elec. Co., 101 F.3d 263, 268 (2d Cir. 1996). To demonstrate motive, a plaintiff must show "concrete and personal benefit to the individual defendants resulting from the fraud." In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d at 894; see In re Gander Mt. Co., 2006 WL 140670, at *23.  "Motive and opportunity are generally relevant, but particularly important to establishing scienter is a showing of unusual or heightened motive to meet the Reform Act standard."  In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d at 894 (internal citation omitted).

Here, Plaintiffs' assertions that the alleged fraudulent scheme was done "intentionally to enrich BAC and the Bank at the expense of Plaintiffs" (Complaint ¶ 111) are too vague to support the conclusion that a particular defendant, either the Bank or BAC, had a heightened motive to deceive.  Indeed, something more is necessary to distinguish the motives of an alleged fraudulent actor from those shared by everyone; otherwise, the requirement of particularized pleading of scienter would be rendered a nullity.  See In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d at 894-95;  In re Navarre Corp. Secs. Litig., 299 F.3d at 746 ("[Plaintiffs] effectively allege nothing more than the fact that the defendants, being highly ranked executives and officers of [defendant], have self-serving motives for the company to appear profitable.  This is not the intent of the 'motive and opportunity' standard…and is insufficient in establishing a strong inference of scienter under the [Reform Act].").[9]

---

[9]     See also Fidel v. Farley, 392 F.3d 220, 232-33 (6th Cir. 2004) (rejecting scienter allegation based on outside auditor's motive to keep client because auditor "would always be motivated to maintain positive relations with a current client, and there is no indication that its motive to retain Fruit of the Loom as a client was any different than its general motive to retain business"); PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 690 (6th Cir. 2004) (observing that courts "distinguish motives common to corporations and executives generally from motives to commit fraud"); GSC Partners CDO Fund v. Washington, 368 F.3d 228, 238 (3d Cir. 2004) (holding that underwriter defendant's desire to generate fees was too generic to give rise to inference of scienter); In re Royal Ahold, 351 F. Supp. 2d at 369 n.19 ("While motive may be a good indication of scienter, simply alleging a defendant's desire to protect his job and compensation is not sufficient, because these motives may be seen as common to all corporate executives").

### b.  *Plaintiffs fail to adequately allege facts constituting evidence of conscious misbehavior or recklessness.*

Plaintiffs' attempts at pleading conscious misbehavior or recklessness are likewise far too vague to satisfy the strict pleading requirement of the Reform Act.  According to the Eighth Circuit, conduct which rises to the level of severe recklessness sufficient to meet the scienter requirement "is limited to highly unreasonable omissions or misrepresentations involving an extreme departure from the standards of ordinary care, and presenting a danger of misleading buyers and sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d at 893 (internal citation omitted).  Moreover, under the Reform Act's pleading standards, it is not enough for plaintiffs to merely allege that defendants knew their statements were fraudulent or that defendants must have known their statements were false -- plaintiffs must plead allegations of scienter with particularity.  Id. at 894.

According to Plaintiff, each of the alleged misrepresentations and/or omissions made in this case were made either with reckless disregard for, or knowledge of, their false and misleading nature.  See Complaint ¶ 111 at p. 43.  However, but for these legal conclusions (which the Court should ignore), Plaintiffs fail to plead absolutely any detail (let alone with particularity) as to the so called reckless behavior of the Defendants.  In other words, Plaintiffs fail to detail the who, what, when, where and how of the alleged misstatements and/or omissions.  In fact, simply by pleading in the alternative that the misstatements and/or omissions were *either* made with knowledge *or* reckless disregard, Plaintiffs admit that they lack the necessary detail to establish that knowledge or reckless disregard with any particularity.

Moreover, even if Plaintiffs' legal conclusions could fulfill the Section 10b pleading standards (which they do not), the conclusions fall far short of the type of egregious behavior necessary to establish conscious misbehavior or recklessness.  To the contrary, as explained above, the Complaint contains only general allegations of motive and is completely void of any allegations of extreme departures from the standards of ordinary care which present a danger of misleading buyers or sellers.  In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d at 893.

- 22 -

### 4. *Plaintiffs fail to plead loss causation adequately.*

Plaintiffs' Section 10b claim should also be dismissed because they fail to adequately allege loss causation. To state a claim under Section 10b, plaintiffs have the burden of pleading (and eventually proving) that the acts or omissions of the defendants caused the losses for which they seek to recover. See 15 U.S.C. § 78u-4(b)(4). Such causation is often referred to as "loss causation." To plead loss causation, plaintiffs must set forth facts showing a causal connection between the material misrepresentation or omission and the alleged loss. See Dura Pharmaceuticals, Inc., 544 U.S. at 341-42; St. Louis Union Trust Co., 562 F.2d at 1048.

Loss causation, like all other elements of a Section 10b claim, must be pled with specificity. However, in this case, Plaintiffs fail to plead their alleged losses with absolutely any detail. Instead, Plaintiffs assert that the Defendants' alleged omission of information regarding alleged conflicts of interest involved with the investment in Nations Funds mutual funds resulted in materially higher investment-related expenses for Plaintiffs. See Complaint ¶ 57. Plaintiffs provide no further detail as to how the alleged omissions resulted in higher expenses, what those higher expenses were, and the amount of their alleged losses. Such lack of specificity is inadequate under Section 10b. See In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig., No. 03 Civ. 8208 (RO), 2006 WL 1008138, at *10 (S.D.N.Y. April 18, 2006) ("Plaintiffs do not state which funds lost money, and they do not tie these losses to defendants' actions with the specificity required by the securities laws. This does not constitute the sufficient pleading of a loss.")

Similarly, Plaintiffs' claim for damages in their Section 10b portion of the Complaint providing that the alleged violations of Section 10b "caused them damages" (with no explanation of how, or what those damages are), "in an amount which cannot presently be determined" are impermissibly vague. Complaint ¶ 113. Such vagueness is unacceptable under the pleading requirements of the Reform Act. As explained by the Supreme Court,

> We concede that ordinary pleading rules are not meant to impose a great burden upon a plaintiff. But it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind. At the same time, allowing a plaintiff to forgo giving any indication of the economic

> loss and proximate cause that the plaintiff has in mind would bring
> about harm of the very sort the statutes seek to avoid.

Dura Pharmaceuticals, Inc., 544 U.S. at 347.  As such, Plaintiffs' failure to adequately plead loss

causation is fatal to their Section 10b claim and their claim should be dismissed.

Moreover, to adequately allege loss causation, the loss must be of a sort that Section 10b

was intended to remedy.  Section 10b protects "investors against manipulation of stock prices."

Basic Inc. v. Levinson, 485 U.S. 224, 230 (1988).  For example, loss causation is typically found

when a stock price is inflated by misrepresentations or omissions.  See In re PEC Solutions, Inc.

Sec. Litig., No. 03-CV-331, 2004 WL 1854202, at *11 (E.D. Va. May 25, 2004) ("to establish

loss causation for a securities fraud claim, the plaintiff must allege: (1) that he or she purchased a

security at a market price that was artificially inflated due to a fraudulent misrepresentation and

(2) that the artificial inflation was actually lost due to the alleged fraud." (citation omitted)),

aff'd, 418 F.3d 379 (4th Cir. 2005).  In this case, however, Plaintiffs do not complain about the

price of the Nations Funds mutual funds, but complain about the lack of disclosure of certain

information regarding the Bank's benefits from the investments.  This is not the type of

impropriety that Section 10b was designed to prevent.  See In re Morgan Stanley, 2006 WL

1008138, at *9-10.

For example, in Castillo, three investors asserted Section 10b claims against Dean Witter

for its alleged failure to disclose an incentive compensation system that promoted the sale of its

proprietary funds through its retail outlets.  See Castillo v. Dean Witter Discover & Co., 1998

WL 342050, at *4-5 (S.D.N.Y. June 25, 1998).  The system rewarded brokers for selling

proprietary products with commissions higher than those paid on foreign funds.  In that case, it

was undisputed that the total amount of fees was disclosed, but the plaintiffs complained about

how those fees were allocated.  See id. at *3.  The court held that plaintiffs could not allege loss

causation since "the allocation of fees would not affect the damages for the losses claimed by

plaintiffs.  It is the total fees charged that would affect the asset value of a mutual fund and the

decision to invest.  The prospectuses disclosed these amounts."  Id. at *5.  In addition, the court

held that the plaintiffs did not plead proximate causation, because "the complaint contains no

allegation that any causal relationship exists between the compensation of the brokers (account executives) and the performances of any fund." Id.

Similarly, in this case Plaintiffs do not complain about the price of the Nations Funds, but about resulting expenses such as fees and capital gains tax.  Complaint ¶ 61.  However, as in Castillo, such complaints do not set forth a causal relationship between the omissions and/or misrepresentations and an alleged loss.  Rather, the allocation of fees or the tax consequences of the conversions had no effect on the price of the Nations Funds, and is therefore immaterial to a Section 10b claim.  See In re Morgan Stanley, 2006 WL 1008138, at *9.  As such, Plaintiffs' failure to plead loss causation renders their Section 10(b) claim insufficient as a matter of law, and Count IV should be dismissed.

> **D.  Plaintiffs' Claims for Control Person Liability Under Section 20(a) of the Exchange Act (Count V) Must Fail.**

Like Section 15 of the Securities Act, Section 20(a) of the Exchange Act does not provide an independent basis for liability.  These provisions impose liability on those who "controlled" any person liable for a primary violation of the relevant Acts.  See 15 U.S.C. §77(o), 78t(a). Where a plaintiff fails to state a claim under Section 10(b), any derivative claim for control person liability under Section 20(a) necessarily fails.  In re Rural Cellular Corp. Sec. Litig., No. Civ. 02-4893 (PAM/RLE), 2004 WL 1278725, at *5 (D. Minn. June 6, 2004) (dismissing Section 20 claim because such a claim is derivative of a Rule 10(b) claim and plaintiffs failed to state such a claim under Rule 10(b)).

> **E.  The Supreme Court Has Confirmed That Plaintiffs' Investment Advisers Act Claim (Count VI) Fails as a Matter of Law.**

In Count VI, Plaintiffs allege that the Bank, BAC and the "RIAs" violated the Investment Advisers Act of 1940.  See Complaint ¶¶ 114-119.  Specifically, Plaintiffs assert that Defendants violated 15 U.S.C. § 80b-6(1), (2) and (4), by engaging in fraud by omission by failing to disclose information to Plaintiffs, which allegedly caused the financial assets for which Plaintiffs are beneficiaries to be invested into Nations Funds.  See id. at ¶ 115.

Plaintiffs' claim is fatally flawed and should be dismissed for numerous reasons.  First and foremost, but for an unspecific legal conclusion (which should be ignored), Plaintiffs have

not alleged that Defendants are "investment advisers" to Nations Funds under the Investment Advisers Act.[10]  In other words, Plaintiffs have alleged no *facts* in the Complaint to show that Defendants are "investment advisers" within the meaning of the Investment Advisers Act.

Second, Count VI fails because no private right of action exists under 15 U.S.C. § 80b-6. The United States Supreme Court's decision in <u>Transamerica Mortgage Advisors, Inc. v. Lewis</u>, 444 U.S. 11 (1979), requires this result.  In <u>Transamerica</u>, the Supreme Court addressed the issue of what claims can be brought as a private right of action under the Investment Advisers Act.  In so doing, the Supreme Court specifically rejected the idea that a private right of action exists under 15 U.S.C. § 80b-6.  <u>See id</u>. at 19-24.  Accordingly, Plaintiffs' claim against Defendants for an alleged violation of 15 U.S.C. § 80b-6 is improper and should be dismissed.  <u>See Nielsen v. Professional Financial Mgmt., Ltd.</u>, 682 F. Supp. 429, 439 (D. Minn. 1987) (dismissing claim under 15 U.S.C. § 80b-6 "[b]ecause no such private cause of action exists"); <u>Harris Trust and Savings Bank v. Ellis</u>, 609 F. Supp. 1118, 1123 (N.D. Ill. 1985) (dismissing claim under 15 U.S.C. § 80b-6 because "there is no such private right of action").[11]

### F.    SLUSA Mandates Dismissal of Plaintiffs' State Law Class Claims (Counts VII-XV)

As mentioned *supra*, in 1995, after determining that meritless and abusive private lawsuits were harming the nation's securities markets, Congress enacted the Reform Act to impose procedural and substantive restrictions on private securities suits in federal court,

---

10    In Paragraph 10 Plaintiffs conclude that BAC, either directly or through the Bank, is a registered investment adviser under the 1940 Act.  Complaint ¶ 10.  Plaintiffs' allegation should be ignored because it is both an unsupported legal conclusion and in direct contravention to federal law.  <u>See</u> 15 U.S.C. § 80b-2(11) (A national banking association and holding company are excluded as "investment advisers" within the meaning of the Investment Advisers Act.).

11    Although the Supreme Court in <u>Transamerica</u> held that no private right of action exists under 15 U.S.C. § 80b-6, the Court did hold that a private right of action exists under 15 U.S.C. § 80b-15.  <u>See</u> 444 U.S. at 18-19.  Under section 80b-15(b), any investment advisor contract made in violation of a provision of the Investment Advisers Act, or the performance of which involves a violation of the Investment Advisers Act, is void and may be rescinded by one of the parties to the contract.  <u>See</u> 15 U.S.C. § 80b-15(b).  Plaintiffs, however, have alleged no such claim under 15 U.S.C. § 80b-15(b) and could not.  Only a party to an investment advisor contract has standing to seek rescission of that contract under 15 U.S.C. § 80b-15 and Plaintiffs have not and cannot allege that they are parties to an investment advisor contract with any of Defendants.  <u>See, e.g.</u>, <u>Clark v. Nevis Capital Mgmt., LLC</u>, 2005 U.S. Dist. LEXIS 3158, at *40-41 (S.D. N.Y. March 3, 2005) (dismissing rescission claim under 15 U.S.C. § 80b-15 because "[o]nly parties to an investment advisory contract may sue for rescission under section 215").

including heightened pleading requirements, more rigorous standards for class representation, and strict statutes of limitations.  <u>Spencer v. Wachovia Bank, N.A.</u>, No. 05-81016, slip. op. at 3 (S.D. Fla. May 10, 2006) (Exhibit G).  Seeking to avoid the Reform Act's restrictions, securities class action plaintiffs began to frame their allegations of securities fraud as state law causes of action and pursue relief in state court.  Congress enacted the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") to close this loophole and to ensure that national, federal standards would be applied to challenges involving publicly traded securities.  See <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit</u>, 126 S.Ct. 1503, 1511 (2006); <u>Dudek v. Prudential Sec., Inc.</u>, 295 F.3d 875, 877 (8th Cir. 2002).[12]

"SLUSA provides for the immediate dismissal of certain putative class actions based on state law alleging an untrue statement or omission of a material fact made in connection with the purchase or sale of a covered security."  <u>Vohs v. Miller</u>, 323 F. Supp.2d 965, 973 (D. Minn. 2004) (citing <u>Dudek</u>, 295 F.3d at 877 n.1).  Preemption and dismissal under SLUSA is appropriate for any claim that meets four criteria: (1) the action is a "covered class action" under SLUSA, (2) the action purports to be based on state law, (3) the defendant is alleged to have misrepresented or omitted a material fact (or to have used or employed any manipulative or deceptive device or contrivance), and (4) the defendant's alleged misrepresentation or omission of a material fact was made "in connection with" the purchase or sale of a "covered security."  <u>Sofonia v. Principal Life Ins. Co.</u>, 378 F. Supp.2d 1124, 1128 (S.D. Iowa 2005) (citing <u>Green v. Ameritrade, Inc.</u>, 279 F.3d 590, 596 (8th Cir. 2002)); 15 U.S.C. §§ 78bb(f)(1)-(2).

The Court must focus on the substance of Plaintiffs' allegations and be wary of efforts to circumvent SLUSA through artful pleading.  See <u>Dudek</u>, 295 F.3d at 879; <u>In re Salomon Smith Barney</u>, 2006 WL 2085979, at *18-19 (dismissing state common law breach of fiduciary duty claims with prejudice and finding plaintiffs' attempt to evade SLUSA unavailing).  The presence or absence of a key word is not determinative of SLUSA's applicability, but rather whether a

---

[12]     SLUSA prevents plaintiffs from bringing state law claims as class claims.  It does not foreclose plaintiffs from bringing individual state law claims.  <u>Spencer v. Wachovia Bank, N.A.</u>, No. 05-81016-CIV-RYSKAMP/VITUNAC, slip op. at 16 (S.D. Fla. May 10, 2006) (citing <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit</u>, 126 S.Ct. 1503, 1514 (2006)) (Exhibit G).

reasonable reading of the complaint reveals allegations generally within SLUSA's purview.  See Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 304 (3d Cir. 2005).  When the "gravamen" of the complaint involves an untrue statement or omission of a material fact, and when that conduct coincides with a transaction involving a covered security, SLUSA mandates dismissal.  See Dudek, 295 F.3d at 879; see also SEC v. Zandford, 535 U.S. 813, 819 (2002).  In this case, Plaintiffs' efforts to circumvent SLUSA through artful pleading are obvious.  Their state law claims are preempted and should be dismissed.  Spencer, slip op. at 1-13.

### 1. *Plaintiffs allege a covered class action.*

Under SLUSA, a "covered class action" is a lawsuit in which "[d]amages are sought on behalf of a class of more than 50 persons or prospective class members . . . ."  15 U.S.C. §§ 78bb(f)(5)(B)(i)(I); 77p(f)(2)(A)(i)(I).  Here, Plaintiffs purport to bring various state law claims on behalf of a nationwide class and state subclasses of involving "at least 70,000 fiduciary accounts…[with] collectively, more than 100,000 beneficiaries thereof."  See Complaint ¶ 81. Plaintiffs' lawsuit meets SLUSA's definition of a covered class action.

### 2. *Plaintiffs' claims are founded on state law.*

Plaintiffs' claims are also clearly founded on state law, as they assert state law claims for breach of fiduciary duty, unjust enrichment, violation of the California and Missouri probate codes, and a violation of California's Unfair Competition Law.  See id. at ¶¶ 120-124, 132-136, 137-146, 147-156, 157-162, 163-174, 175-182; see also Spencer, slip op. at 4-5 (concluding that many of the same claims raised herein involved state law claims).

### 3. *The core allegations in Plaintiffs' Complaint are that Defendants misrepresented or omitted material facts.*

On its face, Plaintiffs' Complaint alleges that Defendants misrepresented and omitted key material facts.  Plaintiffs' Complaint centers on the singular theme that Defendants invested trust assets and other financial assets in Nations Funds through certain misrepresentations and omissions about the value of those investments, purported conflicts of interest and the related fees and expenses.  Plaintiffs' numerous allegations of misrepresentation and omission include, but are not limited to:

Complaint ¶ 52 – [S]aid documents did not disclose the conflicts between the interests of the Bank and BAC…the Bank concealed that it did not consider other non-proprietary mutual funds…; that the "benefits" touted by the Bank in their correspondence to co-trustees and beneficiaries were illusory…; and that the Conversion resulted in a material increase in the total expenses…

Complaint ¶ 58 – [T]he Defendants made no disclosure of the true motives of the Defendants in carrying out the Conversions or the full extent to which they were profiting unjustly there from…

Complaint ¶ 59 – [A]t no time did the foregoing "disclosure" documents disclose clearly…the true additional direct and indirect expenses of the Conversions...

Complaint ¶ 61 – The bank did not disclose…that the Conversions would produce capital gains tax liability... The Bank did not disclose that the conversions would result in a net 20-30 basis point increase at a minimum in the fees and expenses of fiduciary accounts…

The disclosure of fees associated with mutual fund investments is an area comprehensively regulated by federal securities laws and thus is precisely the type of action which SLUSA was intended to pre-empt.  See Press v. Quick & Reilly, Inc., 218 F.3d 121, 131-32 (2d Cir. 2000).  In cases like this where plaintiffs have attempted to conceal claims based on the misrepresentation or omission of material facts with state law labels, courts in this Circuit have disregarded these labels and dismissed the claims as preempted by SLUSA.  See, e.g., Prof'l Mgmt. Assocs., Inc. Employees' Profit Sharing Plan v. KPMG LLP, 335 F.3d 800, 803 (8th Cir. 2003); Dudek, 295 F.3d 875; Sofonia, 378 F. Supp. 2d 1124.

In Spencer, as in this action, the plaintiff alleged that Wachovia, the trustee, by investing trust assets in affiliated mutual funds – Evergreen Funds – without disclosing that such funds were affiliated with Wachovia, and by charging undisclosed advisory and management fees against the trust assets in relation to these funds, engaged in self-dealing in breach of its duty of loyalty to trust beneficiaries.  Exhibit G, Slip op. at 1-2.  In trying to avoid SLUSA preemption, the plaintiff in Spencer argued that her claim was for breach of fiduciary duty and was not predicated on misrepresentations or omissions (id. at 5) – no doubt the same argument Plaintiffs will raise here.  In rejecting plaintiff's arguments in Spencer, the court noted that the Complaint is "replete with claims of misrepresentation." Id. at 7.  The Court went on to quote allegations from the Spencer Complaint that are present in Plaintiffs' Complaint.  Cf. Complaint citations

- 29 -

above <u>with</u> slip op. at 1-2, 8-9 (Exhibit G).[13]  As in <u>Spencer</u>, the "gravamen" of the Amended Complaint is one of misrepresentation and omission.

**4**.    *Plaintiffs' claims are in connection with the purchase of a covered security.*

a.    *Plaintiffs' claims involve a covered security.*

There is no dispute given Plaintiffs' securities laws claims that Nations Funds are "covered" securities, which are defined as securities that satisfy the standards of the Securities Act of 1933, Sections 18(b)(1) and (b)(2), including "those securit[ies] issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940." <u>See</u> 15 U.S.C. §§ 77p(f)(3), 77r(b); <u>Spencer</u>, slip op. at 5; <u>see</u> <u>also</u> <u>Sofonia</u>, 378 F. Supp. 2d at 1128-1129.

b.    *The "in connection with" requirement is met in this case.*

The Supreme Court has given a broad interpretation to the phrase "in connection with" and has held that this language is to be construed "not technically and restrictively, but flexibly to effectuate its remedial purpose," which is "to achieve a high standard of business ethics in the securities industry." <u>Zandford</u>, 535 U.S. at 819; <u>see also</u> <u>Merrill Lynch</u>, 126 S.Ct. 1503, 1513 (citing <u>Super. of Ins. of N.Y. v. Bankers Life & Cas. Co.</u>, 404 U.S. 6 (1971)).  In <u>Merrill Lynch</u>, the Supreme Court recently affirmed that the traditional broad interpretation that has been given to this language extends to the "in connection with" phrase as it is used in SLUSA.  Specifically, the Supreme Court held that "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." <u>See</u> 126 S.Ct. at 1513.  "The requisite showing, in other words, is 'deception "in connection with the purchase or sale of any security," not deception of an identifiable purchaser or seller.'" <u>Id</u>. (citations omitted).

Relying on this interpretation, the Court in <u>Spencer</u> dismissed similar state law claims on SLUSA grounds.  Precisely as in this case, in <u>Spencer</u>, the plaintiffs asserted state law class claims for breach of fiduciary duty and unjust enrichment against Wachovia.  <u>See</u> <u>Spencer</u>, No.

---

13    It is no surprise that the allegations of the <u>Spencer</u> and *Kutten II* Complaints are similar because Plaintiffs' attorney in <u>Spencer</u> was also co-counsel with Plaintiffs' attorney herein for two years in the *Williams* and *Arnold* actions, until 2005.

05-81016, slip op. at 1-2.  (Exhibit G).[14]  After finding that the other requirements of SLUSA were met, the court in Spencer addressed the "in connection with" requirement for SLUSA preemption.  The court reasoned that the plaintiff was essentially alleging that Wachovia misled trust beneficiaries about its investment in affiliated funds and the expenses associated with those transactions.  See id. at 12-13.  Because Wachovia's conduct was premised on, and furthered by, the purchase of the affiliated mutual funds, the court held that the plaintiff's state law claims were "in connection with" the purchase of the shares of the affiliated funds.  See id. at 13.  The court in Spencer, therefore, held that SLUSA preempted plaintiff's state law class claims.

Spencer is squarely on point with this case.  Plaintiffs here allege what amounts to a scheme to mislead fiduciary customers about the Nations Funds investments.  The allegations and claims are premised on, and were allegedly furthered by, the purchase of shares of affiliated mutual funds for the trusts and estates.  As such, Plaintiffs' state law claims are "in connection with" a securities transaction and are preempted by SLUSA.  Precisely as the Court in Spencer recently ruled, all requirements for SLUSA preemption have been met here and, accordingly, the state law class claims in the Complaint must be dismissed.

### 5. *Plaintiffs' state law claims should also be dismissed because the challenged conduct is proper under state law.*

Even assuming *arguendo* that Plaintiffs' state law claims are not preempted by SLUSA, the state law claims are predicated on the faulty contention that the investment of assets in affiliated mutual funds and collection of both the trustee fee and mutual fund fees was improper.  However, the laws of virtually every state, including the states governing Plaintiffs' trusts, permit a bank/trustee to invest trust assets in affiliated mutual funds and to collect trustee and mutual fund fees.[15]  In other words, Plaintiffs have failed to state a claim upon which relief can

---

14     The Spencer plaintiff alleged that Wachovia, among other things, (1) violated state law by investing trust assets in affiliated funds, (2) failed to disclose certain material information relating to the investment in the affiliated funds, and (3) "devised a scheme to maximize its profits by forcing the irrevocable trusts to invest in the Evergreen Funds whether or not such investments were in the best interests of the trusts."  See id.  The allegations in Spencer track those in this case.

15     See Mo. Stat. Ann. § 362.550 (11); Cal. Fin. Code § 1561.1(b); see also 1996 OCC ltr.  LEXIS 33 (OCC Interpretive Letter No. 722 (May 1996)) (opining that a national bank may invest trust assets in proprietary mutual funds and receive trustee fees notwithstanding any fees the mutual fund servicer may charge); Restatement (Third) of Trusts, § 227, cmt. m, at 51; see Hughes v. LaSalle Bank, N.A., 419 F. Supp.2d 605 (S.D.N.Y. 2006) (in dismissing the same claims brought by the same Plaintiffs' counsel, the

be granted because the alleged improper conduct that forms the basis for their claims –
investment in Nations Funds and collection of fees – was expressly authorized by state law.

For example, in the states in which Plaintiffs reside, a claim for unjust enrichment
requires that it be "unjust" or a violation of "the fundamental principles of justice, equity" for the
defendant to retain the benefit. Because the Bank's conduct was authorized by state law,
Plaintiffs cannot show as a matter of law that it would be "unjust" or against "the fundamental
principles of justice" to keep any alleged benefit. Likewise, because the Bank's actions were
authorized under state law, it is axiomatic that those actions could not form the basis of a breach
of fiduciary duty owed to Plaintiffs. Finally, under the California Probate Code, a trustee must
"administer the trust according to the trust instrument…". Cal. Prob. Code § 16000. The trust
instruments in question authorized the Bank to invest in mutual funds. Moreover, California
Financial Code Section 1561.1 and the policy underlying it authorized the conversion at issue.
Taken together, California law provides a safe harbor for the Bank's actions and bar any claim
for "unlawful" or "unfair" business acts or practices under Section 17200.

**G.      Plaintiff Kutten's Individual Claims (Counts XVI-XX) Should be Dismissed.**

In addition to the class action allegations, Plaintiff Kutten attempts to assert four
individual claims: breach of fiduciary duty (Count XVI), breach of contract (Counts XVII and
XVIII), unjust enrichment (Count XIX), and violation of the Missouri Prudent Investor Act
(Counts XX). As set forth below, like the class action claims, each of Plaintiff Kutten's
individual claims fail as a matter of law.

**1.      *The Bank did not breach its fiduciary duty to the Kutten trust when it
invested trust assets in proprietary mutual funds*.**

In Count XVI, Plaintiff Kutten asserts that the Bank breached its fiduciary duties owed to
her by converting the investment of some of the Kutten Trust assets from certain common trust
funds to Nations Funds and charging "excessive" fees. See Complaint ¶ 184(a) – (r). Without
offering a single specific, supporting fact, Plaintiff Kutten also alleges that BAC aided and

Court noted that the applicable state law "expressly permits a trustee to invest and reinvest the trust estate
in affiliated mutual funds").

abetted this alleged breach.  Id. at ¶ 185.  Under Missouri law and the express language of the Kutten Trust Instrument, these claims fail as a matter of law.

### a.   There can be no breach of fiduciary duty where the Bank complied with the terms of the Kutten Trust Instrument.

The Kutten Trust Instrument unambiguously gives the Bank, as trustees, the discretion to invest the assets of the Kutten Trust in mutual funds.  Specifically, Section 4, paragraph (a) of the Trust Instrument provides in part: "The Trustees may invest and reinvest all or any part of the trust estate in such stocks, common and preferred (including the corporate stock of any corporate Trustee, or any of its affiliates), debentures, *shares or participations in any common or mutual fund* …"  See Exhibit D, Kutten Trust Instrument at pp. 11-12.

Under Missouri's Prudent Investor Rule, Defendants cannot be held liable for breach of fiduciary duty (or for breach of contract for that matter) where the settlor authorizes the challenged conduct through specific provisions in the trust instrument.  See Missouri Revised Statute 456.901. 2.  "A settlor may expand or restrict the prudent investor rule detailed in this act by express provisions in the trust instrument.  A trustee is not liable to a beneficiary for the trustee's good faith reliance on these express provisions."  Id.; see also Holdener v. Fieser, 971 S.W.2d 946, 951 (Mo.App. Ct. 1998) ("In determining the meaning of a trust provision under Missouri law, the paramount rule of construction is that the settlor's intent is controlling, and such intention must be ascertained primarily from the trust instrument."); Blue Ridge Bank and Trust Co. v. American Ass'n of Orthodontists, 106 S.W.3d 543, 549 (Mo.App. Ct. 2003) ("Absent ambiguity the intent of the maker of a legal instrument is to be ascertained from the four corners of the instrument … A document is not ambiguous merely because the parties disagree over its meaning."); First National Bank of Kansas City v. Hyde, 363 S.W.2d 647, 655 (Mo. 1962) (When a trustee is granted such discretion by the trust document, that discretion "is not subject to control by the court, except to prevent an abuse by the trustee of his discretion.").[16]

---

[16]    Plaintiff Kutten's challenge of the fees also fails in the face of language in the Kutten Trust Instrument which provides that "the corporate Trustee shall receive compensation for its services in accordance with its published schedule of fees in effect at the date services are rendered."  See Exhibit D, Kutten Trust Instrument at pp. 22-23.

### b. There can be no breach of fiduciary duty where the Bank complied with applicable Missouri law.

Even if the trust instrument did not specifically authorize investments in mutual funds serviced by affiliates, the Bank did not breach its fiduciary duty to the Kutten Trust where Missouri law specifically allows the Bank to proceed as it did. Specifically, Mo. Stat. Ann. § 362.550 (11) authorizes a trustee to:

> invest and reinvest the assets, subject to the standards contained in section 456.520.RSMo., in the securities of any open-end or closed-end management investment company or investment trust registered pursuant to the federal Investment Company Act of 1940 as amended (15 U.S.C. Sections 80a-1, et seq.) (collectively "mutual funds"). Such investment and reinvestment of assets may be made notwithstanding that such bank, trust company or affiliate provides services to the investment company or trust as investment advisor, sponsor, distributor, custodian, transfer agent, registrar, or otherwise, and receives reasonable remuneration for such services.

Mo. Stat. Ann. § 362.550 (11). Indeed, the law was enacted to permit investment into affiliated mutual funds in order to achieve parity and compete with other states. In fact, the Missouri Prudent Investor Act specifically provides a safe harbor for this type of investment authorized by law:

> The general assembly recognizes that persons, corporations, entities or state agencies who have responsibility for investing funds may be subject to a standard that is specifically set forth in other statutes. Under such circumstances, such persons, corporations, entities or state agencies shall comply with the standard of investment set forth in the other statute, and this act shall not modify or repeal that standard.

Mo. Stat. Ann. § 469.913. Stated differently, Missouri law permitted investment of trust assets in Nations Funds, an affiliated mutual fund.

With respect to the trustee fee, as alleged in the Complaint, the Bank reduced its trustee fees by the amount of the investment management fees charged to the mutual fund. See Complaint ¶ 52. Section 362.550 (11) of the Missouri Statutes specifically authorizes compensation to a corporate trustee in conjunction with investments in affiliated mutual funds:

> Such bank or trust company or affiliate thereof is entitled to receive fiduciary fees with respect to such assets. For such services the bank or trust company or affiliate thereof shall be entitled only to the normal fiduciary fee but neither a bank, trust company nor affiliate shall be required to reduce or waive its

> compensation for services provided in connection with the investment and management of assets because the fiduciary invests, reinvests or retains assets in a mutual fund.

Mo. Stat. Ann. § 362.550 (11). Thus, although Plaintiff Kutten attempts to characterize this as "double dipping," the Bank acted in accordance with Missouri Law.[17]

In the Complaint, despite Missouri law, Plaintiff Kutten claims that the Bank made its decision to implement the conversion based upon its own interests and not the interests of its customers. Further, she includes rambling rhetoric claiming, among other things, the Bank failed to make appropriate trades in the equity and bond markets, failed to consider alternative investment vehicles, and so on. Again, where Missouri law permits the conduct challenged here, these allegations cannot provide the basis for a claim.[18]

Because the challenged conduct was authorized by both the Kutten Trust Instrument and Missouri law and because Plaintiff Kutten has suffered no loss here, neither the Bank nor BAC can be held liable under Count XVI of the Complaint.

### 2. *Plaintiff Kutten has failed to state a claim for breach of contract as a matter of law.*

In Counts XVII and XVIII, Plaintiff Kutten appears to allege that the Bank breached certain contractual obligations. Notably, Plaintiff Kutten does not point to any provision of the Kutten Trust Instrument that the Bank failed to follow because the Trust Instrument gave the Bank broad discretionary power, including investing in mutual funds. See Exhibit D, Kutten Trust Instrument at p. 11. Under Missouri law, the requisite elements for a breach of contract action are: (1) the existence of an enforceable contract between the parties; (2) mutual obligations arising under the contract terms; (3) defendant's failure to perform the obligations imposed by the contract; and (4) resulting damage. See Trotter's Corp. v. Ringleader

---

[17]    Moreover, Plaintiff Kutten **admits** that the Trustee provided the fee credit, but claims it was "impossible" for her "to understand and have knowledge of the true cost" of the Conversion. Complaint ¶ 58. This allegation simply does not state a claim.

[18]    Further, investments in affiliated mutual funds are expressly sanctioned by statutes in every state and no case whatsoever has sustained the suggestion that such investments can give rise to a breach of the trustee's duty of loyalty. Estate of Vail v. First of America Trust Co., 722 N.E.2d 248, 252 (1999). Thus, the plain terms of the relevant statutes unambiguously show that not only has there been no breach of trust - there are no damages.

Restaurants, Inc., 929 S.W.2d 935, 941 (Mo. Ct. App. 1996).  Here, Plaintiff Kutten does not allege the existence of a valid contract or the terms of the contract which establish the obligation at issue.  See Volker Court, LLC v. Santa Fe Apartments, LLC, 130 S.W.3d 607, 611 (Mo. Ct. App. 2004).  On this basis alone, her breach of contract claim should be dismissed.

Notwithstanding these legal precepts, Plaintiff Kutten appears to ground her breach of contract claim upon "implied" contractual obligations in the Kutten Trust Instrument.  See Complaint ¶ 197(a)-(d).  Section 197 of the Restatement (Second) of Trusts essentially prohibits common law claims for breach of contract by beneficiaries against trustees:  "Except as stated in § 198, the remedies of the beneficiary against the trustee are exclusively equitable."  The comments to § 197 are even more explicit in prohibiting breach of contract claims against a trustee:

> *(b) Breach of Contract*.  A trustee who fails to perform his duties as trustee is not liable to the beneficiary for breach of contract in the common-law actions of special assumpsit or covenant or in a similar action at law in States in which the common-law forms of action have been abolished.  ***The creation of a trust is conceived of as a conveyance of the beneficial interest in the trust property rather than as a contract.***  Moreover, questions of the administration of trusts have always been regarded as of a kind which can adequately be dealt with in a suit in equity rather than in an action at law, where questions of fact would be determined by a jury and not by the court.  The mere fact that there may happen to be a promise in words by the trustee to perform the trust does not give common-law courts concurrent jurisdiction over the administration of the trust.
>
> ***The trustee by accepting the trust and agreeing to perform his duties as trustee does not make a contract to perform the trust enforceable in an action at law.***  The trustee may by contract undertake other duties than those which he undertakes as trustee, and if he does so he will be liable in an action at law for failure to perform such duties.

Restatement (Second) of Trusts § 197 cmt. b. (1959) (emphasis added).[19]

Further, Plaintiff Kutten's claims deviate from the cardinal rule for the construction of trusts -- that the settlor's intent is controlling.  See Boatmen's Trust Co. v. Sugden, 827 S.W.2d 249, 254 (Mo. Ct. App. 1992) ("We must adhere to the clear language contained in the trust

---

[19]     The only exceptions to the general rule that a trustee cannot be liable for a breach of contract are found in section 198 of the Restatement:  (1) A beneficiary can maintain an action at law for damages against a trustee if the trustee is under a duty to pay money immediately and unconditionally to the beneficiary; and (2) a beneficiary can maintain an action at law if the trustee of a chattel is under a duty to transfer it immediately and unconditionally to the beneficiary and fails to transfer it.  Restatement (Second) of Trusts § 198 (1959).  Neither of these exceptions is applicable here.

instruments and not alter our position because of the result that occurs.").  Here, the Kutten Trust Instrument authorizes the Bank to invest in mutual funds and further provides for the Bank's compensation "for its services in accordance with its published schedule of fees in effect at the date services are rendered."  See Exhibit D, Kutten Trust Instrument at pp. 11-13 and 22.  Accordingly, because (1) Plaintiff Kutten cannot bring a breach of contract claim based on the Kutten Trust Instrument, (2) Plaintiff Kutten has not pled any of the requisite elements for a breach of contract claim, and (3) the settlor's intent authorized the conduct in question, Counts XVII and XVIII should be dismissed.

### 3.   *Plaintiff Kutten's claim for unjust enrichment fails as a matter of law.*

To state a claim for unjust enrichment, Plaintiff Kutten must plead that the Bank and BAC received a benefit from her and unjustly retained the benefit at her expense.  See American Civil Liberties Union/Eastern Missouri Fund, et al., v. B. Stephen Miller, III, 803 S.W.2d 592, 595 (Mo. 1991).  Plaintiff Kutten has failed to plead these requisite elements.

First, Plaintiff Kutten must plead that any benefit conferred was, in fact, unjustly retained.  See, e.g., William D. Graves d/b/a Graves Construction v. Jerry Berkowitz, et al., 15 S.W.3d 59, 61 (Mo. Ct. App. 2000) ("'Mere receipt of benefits' is not enough when there is no showing that it would be unjust for defendant to retain the benefit received.").  "In determining whether it would be unjust for the defendant to retain the benefit, courts consider whether any wrongful conduct by the defendant contributed to the plaintiff's disadvantage."  S&J, Inc. v. McLoud & Co. L.L.C., 108 S.W.3d 765, 768 (Mo. Ct. App. 2003); see also Rolla Lumber Co. v. Evans, 482 S.W.2d 519 (Mo. Ct. App. 1972) (suggesting that a claim for unjust enrichment can be based "only on an element of misconduct or fault or undue advantage taken by one party of another.").

Where the Kutten Trust Instrument authorized the fees assessed by the Bank and where the Bank complied with Missouri law, it is inconceivable that any benefit obtained by the Bank was "unjust."  See S&J, Inc., 108 at 768 (holding that where nothing in the record indicated that defendant engaged in any wrongful conduct, a claim for unjust enrichment fails); see also Van de Kamp v. Bank of America, 204 Cal. App. 3d 819, 855 (1988) (no unjust enrichment where

defendant bank derived profit from the use of plaintiff's trust funds in a manner consistent with the Probate Code and Financial Code).

Moreover, there are no allegations in the Complaint that Plaintiff Kutten herself, as co-trustee and beneficiary, conferred *any* benefit or advantage on the Bank or BAC.  "[A] benefit can be conferred when one adds to another's property or saves the other from expense or loss."  Helm Financial Corp. v. Iowa Northern Railway Co., 214 F. Supp.2d 934, 988 (N.D. Iowa 2002) (internal citations omitted).  By investing assets of the Trust in mutual funds in accordance with the Kutten Trust Instrument and Missouri law, the Bank did not receive any advantage.  Although Plaintiff Kutten claims that the Bank and BAC "double-dipped" by first taking the trustee fee and then taking an investment fee through its affiliates, no benefit was actually conferred because, as Plaintiff Kutten admits, the Bank credits back the investment advisory fee to the trustee account.  Complaint ¶ 55.  Thus, there could be no "double-dip."  In this case, there was no unjust benefit conferred upon the Bank or BAC, by Plaintiff Kutten or the Kutten Trust.  Accordingly, Plaintiff cannot plead a claim for unjust enrichment as a matter of law, and Count XIX should be dismissed.

### 4. *As a matter of law, neither the Bank nor BAC violated Chapter 456 of Missouri's Revised Statutes - Count XX should be dismissed.*

Similar to Counts VII and XVI, in Count XX of the Complaint Plaintiff Kutten alleges individual violations of Missouri's Prudent Investor Act amounting to a breach of fiduciary duty.  Complaint ¶¶ 205-215.  Here, the Bank has complied with the Kutten Trust Instrument and all relevant statutes so that there can be no breach of fiduciary duty.  Plaintiff's claims in Counts VII, XVI and XX once again fail as a matter of law.

Plaintiff Kutten claims that the Corporate Trustee breached its obligations by engaging in a transaction that gave rise to a conflict of interest.  See Complaint ¶¶ 205-215.  Again, however, as outlined above, the Missouri Prudent Investor Act expressly permitted the Bank to engage in what otherwise could be couched as "self-dealing."  Where the Trustee complied with applicable law, there can be no violation of the duty of loyalty as a matter of law.  See Mo. Stat. Ann. § 456.913; see also Van de Kamp, 204 Cal. App. 3d at 840, 854 (no duty of loyalty violation

where Probate Code and Financial Code authorized bank's practices of self-depositing, self-pooling, fail-floating, and disburse-floating).

Moreover, the Bank acted in accordance with the broad discretion granted by the Trust Instrument which specifically permitted investments in mutual funds.  The Missouri Prudent Investor Act provides that "a settlor may expand or restrict the prudent investor rule detailed in this act by express provisions in the trust instrument.  *A trustee is not liable to a beneficiary for the trustee's good faith reliance on these express provisions*."  Mo. Stat. Ann. § 456.901(2) (emphasis added); see also Boland v. Mercantile-Commerce Bank & Trust Co., 163 S.W.2d 597, 600 (Mo. 1942) ("In construing the trust instrument all provisions must be read and considered and given effect, if that can be done."); Troost Ave Cemetery Co. v. First Nat'l Bank of Kansas City, 409 S.W.2d 632, 637 (Mo. 1966) ("Provisions of a trust instrument should not be lightly disregarded ….").  Accordingly, any alleged violations of the Bank's common-law or statutory duties are of no consequence where the Trust Instrument authorized investment in mutual funds. Having complied with the Trust Instrument itself and Missouri law, the Corporate Trustee has fulfilled its fiduciary obligations.

## CONCLUSION

Based on the foregoing, Defendants Bank of America, N.A. and Bank of America Corporation request that the Court dismiss the Complaint.


DATED: September 14, 2006

                                  Respectfully submitted,

                                  BRYAN CAVE LLP

                                  By: /s/ Jeffrey S. Russell_____
                                  Jeffrey S. Russell #4232
                                  Darci F. Madden #95927
                                  One Metropolitan Square
                                  211 N. Broadway, Suite 3600
                                  St. Louis, MO  63102
                                  Telephone: 314.259.2000
                                  Facsimile:  314.259.2020

                                  Gregory B. Jordan
                                  Mary J. Hackett
                                  Christopher J. Soller
                                  Sharon L. Rusnak
                                  REED SMITH LLP
                                  435 Sixth Avenue
                                  Pittsburgh, PA 15219
                                  Telephone: 412.288.3131
                                  Facsimile:  412.288.3063

                                  Attorneys for Defendants Bank of America,
                                  N.A. and Bank of America Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served this 14th day of September, 2006 upon the following counsel of record by the Court's electronic filing system:

Steven M. Hamburg, Esq.
Holly M. McIntyre, Esq.
Summers, Compton, Wells & Hamburg, P.C.
8909 Ladue Road
St. Louis, MO  63124

Richard D. Greenfield, Esq.
Greenfield & Goodman LLC
7426 Tour Drive
Easton, MD  21601

/s/ Jeffrey S. Russell
Counsel for Defendants Bank of America,
N.A. and Bank of America Corporation

Date:  September 14, 2006