**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ELLEN JANE KUTTEN, individually, and on behalf of her daughters<br><br>and<br><br>MARY ANN ARNOLD, ELSIE MAHLER SCHARFF, JOHN F. MEDLER, JR., MICHAEL R. MEDLER, and JEFFREY P. MEDLER, on behalf of themselves, and all others similarly situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>BANK OF AMERICA, N.A.<br><br>and<br><br>BANK OF AMERICA CORPORATION,<br><br>       Defendants. | Case No. 4:06 –CV– 0937 (PAM) |

**DEFENDANTS BANK OF AMERICA, N.A. AND
BANK OF AMERICA CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS AMENDED COMPLAINT</u>**

Jeffrey S. Russell, Esq.
Darci Madden, Esq.
BRYAN CAVE LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO  63102
Telephone:  314.259.2000

Gregory B. Jordan, Esq.
Mary J. Hackett, Esq.
Christopher J. Soller, Esq.
Sharon L. Rusnak, Esq.
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  412.288.3131

Counsel for Defendants

## **TABLE OF CONTENTS**

Page

**INTRODUCTION**................................................................................................................... 1

**FACTUAL AND PROCEDURAL BACKGROUND** .................................................................. 2

**ARGUMENT** ............................................................................................................................ 4

    I.    This Court Should Dismiss the Amended Complaint ................................................ 4

        A.    SLUSA Mandates Dismissal of Plaintiffs' State
Law Class Claims (Counts I-XII) .................................................................... 4

            1.    Plaintiffs allege a covered class action .............................................. 5

            2.    Plaintiffs' claims are founded on state law........................................ 6

            3.    The core allegations in Plaintiffs' Amended
Complaint are that Defendants misrepresented
or omitted material facts ..................................................................... 6

            4.    Plaintiffs' claims are in connection with the
purchase of a covered security ........................................................... 8

                a.    Plaintiffs' claims involve a covered security......................... 8

                b.    The "in connection with" requirement is met
in this case.............................................................................. 8

        B.    The Court Should Decline Jurisdiction Over this Case
Because of Forum Shopping ......................................................................... 10

    II.    The Court Should Not Exercise Jurisdiction Over Plaintiff Kutten's
Individual Claims.................................................................................................... 11

**CONCLUSION** .............................................................................................................. 13

.

**INTRODUCTION**

This Court has already dismissed the very claims asserted in this action, and it should so rule again. Siepel, et al. v. Bank of America, et al., No. 05-2393(PAM), 2006 WL 3837129, at *1 (E.D. Mo. December 27, 2006) (dismissing amended complaint filed by the same plaintiffs' counsel on behalf of the same putative class asserting the same state law causes of action). In seeking to consolidate this action with Siepel, Plaintiffs stated that the two actions "set forth near-identical core claims against Defendants." See Plaintiffs' Memorandum of Law in Support of Consolidation, p. 3 (Docket Entry No. 5). Accordingly, this case, like Siepel, should be dismissed.

This action is the last of *eight* actions Plaintiffs' counsel has filed against Bank of America, N.A. (the "Bank") concerning its role as trustee for certain individual trust accounts. The Bank has incurred the expense of responding to 17 other complaints despite the fact that the challenged conduct – the investment of trust assets in its affiliated mutual funds – is authorized under state law. Further, this Court in May, 2006, dismissed the prior action that Plaintiffs filed, Kutten et al. v. Bank of America, N.A., et al., No. 04-0244 (PAM), 2006 WL 1520588, at *2 (E.D. Mo. May 26, 2006) ("Kutten I"), because, after two years of discovery, Plaintiffs could not provide a "scintilla of evidence" of any damage to provide a basis for subject matter jurisdiction. There is no unlawful conduct or harm here.

In response to the dismissal of Kutten I, Plaintiffs re-filed their case last June, asserting securities law claims as a basis for subject matter jurisdiction. In response to Defendants' motion to dismiss, demonstrating that the securities law claims could not be sustained as a matter of law, and continuing with their pattern of musical complaints, Plaintiffs filed the Amended Complaint, withdrawing the securities law claims and once again asserting state law claims.

At the end of 2006, this Court dismissed Siepel, holding that the Securities Litigation Uniform Standards Act ("SLUSA") preempted the state law claims. In response, Plaintiffs should have folded their tent and dismissed this action. The claims here are similarly preempted under SLUSA and should be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

As outlined in its Memorandum of Law in support of the Bank Defendants' Motion to Dismiss the Amended Complaint in Siepel, Plaintiffs and their counsel have unquestionably engaged in a pattern of forum and judge shopping in filing eight actions and 18 complaints against Bank of America in four states asserting similar causes of action on behalf of the same putative class.  Defendants incorporate by reference the extensive, four-year tale of Plaintiffs' filings and dismissals as set forth in the dismissal papers in Siepel.[1]  Defendants will not repeat yet again what they has been outlined many times before.  See also Siepel, 2006 WL 3837129, at *3.

With respect to the particular history of these Plaintiffs, Kutten I was filed with this Court in February 2004.  Plaintiff Kutten originally filed that action on behalf of herself and her daughters, as well as on behalf of the putative class and a Missouri sub-class.  Plaintiff Kutten alleged a putative class action against the Bank and Bank of America Corporation ("BAC") claiming that the Bank and BAC had breached various purported fiduciary and contractual duties with respect to the administration of trust accounts.  Two more amended complaints followed in that action, including one to add Plaintiff Mary Ann Arnold and one to drop Ellen Kutten as a class representative and to add Plaintiff Elsie Scharff.[2]

After two years of extensive discovery (more than 30 depositions, hundreds of document requests and over 20 discovery motions) and the filing of expert reports, it became apparent that

---

[1]     Pursuant to Federal Rule of Civil Procedure 10(c), Defendants incorporate by reference Docket Entry Nos. 63 and 64 of Siepel et al. v. Bank of America, N.A., et al., Civ. No. 4:05-CV-02393 (PAM) (E.D. Mo.).

[2]     Plaintiff Arnold had previously filed a putative class action on behalf of herself and others similarly situated in federal court in California in November 2003.  In that action, Ms. Arnold asserted the same causes of action asserted in this action.  After the Court expressed its skepticism as to whether a class could be certified and set a tight briefing schedule, Ms. Arnold, through the same counsel here, promptly moved to voluntarily dismiss that action, which the Court granted.  Subsequently, Plaintiff Arnold re-filed her claims as part of the first amended complaint filed in Kutten I.  Plaintiffs' counsel has represented the Medler Plaintiffs since 2004 when they filed a declaration in the Arnold action.  Two years later, after Plaintiffs in Kutten I lost several discovery motions before Judge Shaw, the Medler Plaintiffs moved to intervene in Kutten I, triggering not only Judge Shaw's recusal, but the recusal of all district court judges in the Eastern District of Missouri.

Plaintiffs Kutten, Arnold and Scharff could not articulate any harm or damage their trusts had incurred as a result of the alleged wrongful conduct to satisfy the amount in controversy requirement for subject matter jurisdiction. Accordingly, Defendants moved to dismiss <u>Kutten I</u> for lack of subject matter jurisdiction.

Thereafter, the <u>Kutten I</u>, <u>Kutten II</u> and <u>Siepel</u> Plaintiffs, represented by the same counsel, initiated an inexplicable and inexcusable strategy of filing and amending complaints in an attempt to save these doomed claims:

- In the end of 2005, the <u>Siepel</u> Complaint is filed while <u>Kutten I</u> is pending. The <u>Siepel</u> complaint, like the <u>Kutten I</u> complaint, asserts only state law claims. In response, Defendants move to dismiss <u>Siepel</u> because the claims are preempted by SLUSA.

- In March, 2006, in response to Defendants' Motion to Dismiss, the <u>Siepel</u> Plaintiffs file an Amended Complaint adding securities law claims. Defendants move to dismiss this Amended Complaint.

- In May, 2006, this Court grants Defendants' motion to dismiss in <u>Kutten I</u>, finding that Plaintiffs had not provided a "scintilla of evidence" of damage. <u>Kutten</u>, 2006 WL 1520588 at *2 (E.D. Mo. May 26, 2006).

- In June, 2006, with <u>Siepel</u> pending, Plaintiffs file <u>Kutten II</u>. The <u>Kutten II</u> complaint raises securities law and state law claims.

- In August, 2006, in response to the Defendants' motion to dismiss, the <u>Siepel</u> Plaintiffs file a response ignoring the securities law arguments and address only the SLUSA preemption argument. The <u>Siepel</u> Plaintiffs then seek Court approval to withdraw the securities law claims and return to their original complaint.[3] The <u>Kutten II</u> Plaintiffs, however, do not withdraw their securities law claims and instead, wait for Defendants to incur the expense of moving to dismiss these

---

[3] The Court noted that Plaintiffs' abandonment of these claims "implicitly concedes that they should have not filed the Amended Complaint in the first place." <u>Siepel</u>, 2006 WL 3837129, at *13.

- 3 -

> claims. Defendants, therefore, had no choice but to move to dismiss the claims once again.

➤ In October, 2006, once again, in response to Defendants' motion to dismiss, the Kutten II Plaintiffs file an Amended Complaint and once again withdraw the securities law claims.

The allegations of the Kutten II Amended Complaint hinge on the Bank's purported breach of fiduciary duty to beneficiaries of fiduciary accounts and the investment of Plaintiffs' trust assets in the Bank's affiliated mutual funds. See Amended Complaint ¶2. The class claims also include various state law claims for unjust enrichment, breach of contract, violation of the California and Missouri probate codes, and a violation of California's Business and Professions Code. Id. at ¶¶69-145.

## ARGUMENT

### I. This Court Should Dismiss the Amended Complaint.

#### A. SLUSA Mandates Dismissal of Plaintiffs' State Law Class Claims (Counts I-XII).

Plaintiffs' attempt to dress their misrepresentation and omission claims as state law claims for breach of fiduciary duty and breach of contract is nothing new. This Court has seen and heard it all before. Plaintiffs' Amended Complaint suffers the same fatal flaws as Siepel: it is preempted by SLUSA and must be dismissed. Indeed, Plaintiffs have conceded this point by filing securities claims in the first instance in this action. The fact that Plaintiffs' securities law claims cannot be sustained as a matter of law is not grounds to avoid SLUSA preemption. This is precisely what Congress intended when it enacted SLUSA.

In 1995, after determining that meritless and abusive private lawsuits were harming the nation's securities markets, Congress enacted the Reform Act to impose procedural and substantive restrictions on private securities suits in federal court, including heightened pleading requirements, more rigorous standards for class representation, and strict statutes of limitations. Spencer v. Wachovia Bank, N.A., No. 05-81016, 2006 WL 3408043, at *5 (S.D. Fla. May 10,

- 4 -

2006). Seeking to avoid the Reform Act's restrictions, securities class action plaintiffs began to frame their allegations of securities fraud as state law causes of action and pursue relief in state court. Congress enacted SLUSA to close this loophole and to ensure that national, federal standards would be applied to challenges involving publicly traded securities. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S.Ct. 1503, 1511 (2006); Dudek v. Prudential Sec., Inc., 295 F.3d 875, 877 (8th Cir. 2002).

"SLUSA provides for the immediate dismissal of certain putative class actions based on state law alleging an untrue statement or omission of a material fact made in connection with the purchase or sale of a covered security." Vohs v. Miller, 323 F. Supp.2d 965, 973 (D. Minn. 2004) (citing Dudek, 295 F.3d at 877 n.1). Preemption and dismissal under SLUSA is appropriate for any claim that meets four criteria: (1) the action is a "covered class action" under SLUSA, (2) the action purports to be based on state law, (3) the defendant is alleged to have misrepresented or omitted a material fact (or to have used or employed any manipulative or deceptive device or contrivance), and (4) the defendant's alleged misrepresentation or omission of a material fact was made "in connection with" the purchase or sale of a "covered security." Sofonia v. Principal Life Ins. Co., 378 F. Supp. 2d 1124, 1128 (S.D. Iowa 2005), aff'd, 465 F.3d 872 (8th Cir. 2006) (citing Green v. Ameritrade, Inc., 279 F.3d 590, 596 (8th Cir. 2002)); 15 U.S.C. §§ 78bb(f)(1)-(2). As this Court held in Siepel, each element is present here.

### 1. *Plaintiffs allege a covered class action.*

Under SLUSA, a "covered class action" is a lawsuit in which "[d]amages are sought on behalf of more than 50 persons or prospective class members . . . ." 15 U.S.C. §§ 78bb(f)(5)(B)(i)(I); 77p(f)(2)(A)(i)(I). Here, Plaintiffs purport to bring various state law claims on behalf of a nationwide class of thousands of beneficiaries. See Amended Complaint ¶63. Plaintiffs in Siepel conceded this point.

### 2. *Plaintiffs' claims are founded on state law.*

Plaintiffs' claims are clearly founded on state law, as they assert state law claims for breach of fiduciary duty, unjust enrichment, breach of contract, violation of the California and Missouri probate codes, and a violation of California's Business and Professions Code. Amended Complaint at ¶¶ 69-73, 82-145. Again, Plaintiffs in Siepel conceded this point.

### 3. *The core allegations in Plaintiffs' Amended Complaint are that Defendants misrepresented or omitted material facts.*

The court must focus on the substance of Plaintiff's allegations and be wary of efforts to circumvent SLUSA through artful pleading. See Siepel, 2006 WL 3837129 at *8; Felton v. Morgan Stanley Dean Witter, 429 F.Supp.2d 684, 693 (S.D.N.Y. 2006) (dismissing a "securities fraud wolf dressed up in a breach of contract sheep's clothing"). Artful pleading is a proscribed practice to avoid SLUSA preemption and courts are cautioned that the presence or absence of a key word is not determinative of SLUSA's applicability. See Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 304 (3d Cir. 2005); Behlen v. Merrill Lynch, 311 F.3d 1087, 1095 (11th Cir. 2002) (holding that deletions in an amended complaint did not change the crux of complaint to avoid dismissal under SLUSA). When the "gravamen" of the complaint involves an untrue statement or omission of a material fact, and when that conduct coincides with a transaction involving a covered security, SLUSA mandates dismissal. See SEC v. Zandford, 535 U.S. 813, 819 (2002).

In this case, Plaintiffs' efforts to circumvent SLUSA through artful pleading are obvious. Plaintiffs filed securities law claims in the first instance. Indeed, in the Complaint, Plaintiff explicitly pled numerous omissions and misrepresentations, including allegations that the disclosure and authorization forms provided by the Bank to Plaintiffs were "coercive," "deceptive," and "unclear," and that the Bank "fraudulently induced 'consent' to the Conversions." See Original Complaint ¶53, Docket Entry No. 1.

In response to Defendants' motion to dismiss, Plaintiffs filed an Amended Complaint deleting their securities law claims and trying to replead their class claims to avoid SLUSA.

- 6 -

However, Plaintiffs' attempt to avoid SLUSA preemption by excising their securities law claims and "key" words such as "fraudulently induced" and "coercive" from the Amended Complaint is of no moment.  Plaintiffs' manipulation of allegations with semantics does not, and simply cannot, change the factual predicate that the state law claims are based upon – that is, that Defendants allegedly invested trust assets and other financial assets in Nations Funds through certain misrepresentations and omissions about the value of those investments, purported conflicts of interest and the related fees and expenses.

In the Amended Complaint, Plaintiffs still repeatedly allege non-disclosures and omissions concerning all aspects of the mutual fund investments, including alleged misstatements and omissions in the mutual fund prospectuses and other disclosure documents. See, e.g., Amended Complaint at ¶27 ("[T]he Bank *did not disclose all material facts*, including that the transfer would have a material adverse affect on [the plaintiffs] that they had a right to object…."); ¶50 ("it was (and is) *impossible for [plaintiffs] to understand and know the true cost* of ownership of Nations Funds to the fiduciary accounts….[Plaintiffs] have never received 'straight' or any answers…and have received *misleading or deceptive information* as to the impact of such investments upon them and their fiduciary accounts."); ¶85 ("The Bank enhanced its profit performance at Plaintiffs' expense by favoring the use of its own Nations Funds…*under the guise* of allegedly providing more participants in its so-called 'Private Bank and otherwise.'") (emphasis added).  Semantics cannot and should not permit Plaintiffs to avoid SLUSA preemption.  Behlen, 311 F.3d at 1095.

The disclosure of fees associated with mutual fund investments is an area comprehensively regulated by federal securities laws and thus is precisely the type of action which SLUSA was intended to pre-empt.  See Press v. Quick & Reilly, Inc., 218 F.3d 121, 131-32 (2d Cir. 2000); see also In re Edward Jones Holders Litig., 453 F.Supp.2d 1210, 1215 (C.D. Cal. 2006) (SLUSA applied where plaintiff alleged defendant "distorted its investment advice to steer Plaintiffs" to covered securities).  In cases like this where plaintiffs have attempted to conceal claims based on the misrepresentation or omission of material facts with state law labels,

courts in this Circuit have disregarded these labels and dismissed the claims as preempted by SLUSA. See, e.g., Dudek, 295 F.3d 875; Sofonia, 378 F. Supp. 2d 1124, Siepel, 2006 WL 3837129 at *8.

Further, there are not one but two actions squarely on point where trust beneficiaries asserted claims arising out of the bank/trustee's investment of trust assets in affiliated mutual funds. In those actions, the Courts granted the defendants' motions to dismiss based upon SLUSA preemption. Spencer, 2006 WL 3408043, at *9; Siepel, 2006 WL 3837129, at *2. As this Court recognized in Siepel, each of Plaintiffs' state law claims "hinge on Plaintiffs' contention that they were harmed by Defendants' misrepresentations and omissions of material facts regarding the purchase of Nations Funds." Siepel, 2006 WL 3837129, at *9. Plaintiffs cannot escape the fact that their entire complaint is premised on an alleged misrepresentation or omission by Defendants. As such, their claims cannot survive SLUSA preemption and must be dismissed.

### 4. Plaintiffs' claims are in connection with the purchase of a covered security.

#### a. Plaintiffs' claims involve a covered security.

There is no dispute given Plaintiffs' securities law claims that Nations Funds are "covered" securities under SLUSA. See Siepel, 2006 WL 3837129, at *9; see also 15 U.S.C. §§ 77p(f)(3), 77r(b); Sofonia, 378 F. Supp. 2d at 1128-1129.

#### b. The "in connection with" requirement is met in this case.

The Supreme Court has given a broad interpretation to the phrase "in connection with" and has held that this language is to be construed "not technically and restrictively, but flexibly to effectuate its remedial purposes," which is "to achieve a high standard of business ethics in the securities industry." Zandford, 535 U.S. at 819; see also Dabit, 126 S.Ct. at 1513 (citing Super. of Ins. of N.Y. v. Bankers Life & Cas. Co., 404 U.S. 6 (1971)). In Dabit, the Supreme Court affirmed that the traditional broad interpretation that has been given to this language extends to the "in connection with" phrase as it is used in SLUSA, holding that "it is enough that the fraud

alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." See Dabit, 126 S.Ct. at 1513. "The requisite showing, in other words, is deception "in connection with the purchase or sale of any security," not deception of an identifiable purchaser or seller.'" Id. (citations omitted).

Once again, the decisions in Siepel and Spencer confirm that this requirement for SLUSA preemption is satisfied. In Siepel, this Court rejected plaintiffs' argument that the "in connection with the purchase or sale of a covered security" requirement was not met. Id. at *10. Specifically, plaintiffs argued that SLUSA preemption did not apply because plaintiffs themselves were not purchasers or sellers of the securities at issue. Id. Relying on the Supreme Court's decision in Dabit and its progeny, this Court correctly held that the "in connection with the purchase or sale of securities" phrase must be read broadly so as to cover holders of securities where the alleged fraud coincides with a securities transaction. Id. Quoting Dabit, this Court explained that for the purposes of SLUSA preemption, "it is not the identity of the plaintiffs, but the alleged conduct of defendants that determines whether the complaint alleges fraud 'in connection with the purchase or sale' of securities." Id. at *11. See also Beckett v. Mellon Inv. Servs., LLC, No. C06-5245 FDB, 2006 WL 3249189, at *4 (W.D. Wash. Nov. 8, 2006) (holding that plaintiff's artful pleading was of no moment and his state law claims challenging undisclosed fees inherently included claims of alleged misrepresentation preempted by SLUSA).

The decisions in Siepel, Spencer and Beckett are squarely on point with this case. Plaintiffs here allege what amounts to a scheme to mislead fiduciary customers about the Nations Funds investments. See, e.g., Amended Complaint ¶¶32, 85. The allegations and claims are premised on, and were allegedly furthered by, the purchase of shares of affiliated mutual funds for the trusts and estates. As such, Plaintiffs' state law claims are "in connection with" a securities transaction and are preempted by SLUSA.

Finally, Plaintiffs should not be heard to claim that they did not purchase the securities in question. First and foremost, Plaintiff Arnold certified under penalty of perjury that she

- 9 -

*purchased* Nations Funds.  See Certification of Proposed Lead Plaintiff, Docket Entry No. 8. Ellen Kutten was the co-trustee and authorized every purchase made for her trust.  In any event, whether or not Plaintiffs purchased the securities in question is not dispositive.  This is precisely the point the Supreme Court confirmed in Dabit.  126 S.Ct. 1503, 1515 (2006).  There the Court clarified that class claims by ***non-purchasers*** that "coincide" with the purchase or sale of a covered security are preempted by SLUSA.  Id. at 1513-14 ("Under our precedents, it is enough that the fraud alleged 'coincide' with a securities transaction--whether by the plaintiff or by someone else.").  The Court held that "[f]or purposes of SLUSA pre-emption that distinction is irrelevant; the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale of securities.'"  Id. at 1515; see also Siepel, 2006 WL 3837129, at *10 (rejecting this very argument by plaintiffs); Sofonia, 465 F.2d at 879 n.4; Spencer, 2006 WL 3408043, at *6.

Because all four of the requisite SLUSA preemption factors are met here, the Amended Complaint should be dismissed.

### B. The Court Should Decline Jurisdiction Over This Case Because Plaintiffs Have Engaged in Forum Shopping.

"Judge-shopping[4] is a practice that has been universally condemned."  Lane v. City of Emeryville, No. 93-16646, 1995 U.S. App. LEXIS 11629, at *4 (9th Cir. May 16, 1995). Included within the court's authority is the discretion to decline jurisdiction over a case that has been filed for the purpose of judge shopping.  See, e.g., Zografos v. Qwest Comms. Corp., 225 F. Supp.2d 1217, 1223-1224 (D. Or. 2002); McDermott v. Toyota Motor Sales Co., Ltd., 487 F. Supp. 484 (E.D. Tenn. 1980) (dismissing case).

---

[4] Some courts use the terms "judge shopping" and "forum shopping" interchangeably. Regardless of the term used, the act of voluntarily dismissing and refiling a case in another court or in front of another judge is prohibited.  Cf. Vaqueria Tres Monjitas, Inc. v. Rivera Cubano, 341 F. Supp.2d 69, 73 (D.P.R. 2004) (plaintiffs engaged in "judge shopping" by voluntarily dismissing and refiling the same case) with McDermott v. Toyota Motor Sales Co., Ltd., 487 F. Supp. 484, 486 (E.D. Tenn. 1980) (plaintiff's act of voluntarily dismissing and refiling the same case constituted "forum shopping").

Here, as outlined previously, Plaintiffs and their counsel have unquestionably engaged in a pattern of forum and judge shopping in filing eight actions and 18 complaints against Bank of America in four states asserting similar causes of action on behalf of the same putative class. These cases have been filed and re-filed throughout the county with the sole intent of perpetuating them while avoiding an ultimate decision on the merits. This forum shopping, of which the Court is well aware (see Siepel, 2006 WL 3837129, at *4-9) mandates dismissal of this action.

## II.  This Court Should Not Exercise Jurisdiction Over Plaintiff Kutten's Individual Claims.

Having long ago abandoned her efforts to serve as a class representative for reasons which would provide fodder to defeat any motion for class certification, Ellen Kutten continues to press her own individual claims. Her claims should be dismissed as well.

First, as this Court held in Siepel, SLUSA preemption mandates dismissal of the entire class action – not just individual claims. Siepel, 2006 WL 3837129 at *12 n. 11. (citing Lord Abbett Mutual Funds Litig., No. 04-559, 2006 WL 348946, at **3-7 (D.N.J. Dec. 4, 2006).

Second, this Court lacks jurisdiction to hear Plaintiff Kutten's claims. Presumably, Plaintiff Kutten seeks to bring her individual claims in this Court based on diversity jurisdiction under 28 U.S.C. §1332(a).[5]  Plaintiff Kutten is collaterally estopped from bringing her individual claims in this court based on diversity jurisdiction.

This Court has already found that Plaintiff Kutten's claims do not meet the amount in controversy requirement. In Kutten I, Plaintiff Kutten attempted to bring the same claims against the Bank and BAC for the same alleged improper conduct. Defendants moved to dismiss Plaintiff Kutten's claims for lack of subject matter jurisdiction. Despite substantial discovery, the Court found that Plaintiff Kutten failed "to submit a scintilla of evidence" to establish

---

[5]  Given that there is no jurisdiction over the putative class, Plaintiff Kutten cannot rely on supplemental jurisdiction for her individual claims. As such, her only remaining basis for federal jurisdiction is diversity jurisdiction pursuant to 28 U.S.C. §1332(a). As set forth above, she cannot meet the requirements for diversity jurisdiction.

damages sufficient to meet the amount in controversy requirement.  See Kutten, 2006 WL 1520588, at *2.  Accordingly, the Court dismissed Plaintiff Kutten's individual claims for lack of subject matter jurisdiction.  See id. at *3.

As a result of the Kutten I decision, Plaintiff Kutten is now collaterally estopped from asserting that her claims meet the amount in controversy requirement under 28 U.S.C. §1332(a). "The doctrine of collateral estoppel, or issue preclusion, provides that when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in another lawsuit."  Robb v. Hungerbeeler, 281 F. Supp.2d 989, 995 (E.D. Mo. 2003), aff'd, 370 F.3d 735 (8th Cir. 2004).  Collateral estoppel prohibits a party from relitigating an issue previously decided when all of the following elements are present: (1) the issue decided in the prior action is identical to the issue sought to be precluded; (2) the prior action resulted in a final adjudication on the merits; (3) the party against whom estoppel is asserted was either a party or in privity with a party to the prior action; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. See Royal Ins. Co. of Am. v. Kirksville College of Osteopathic Medicine, Inc., 304 F.3d 804, 807 (8th Cir. 2002); Robb, 281 F. Supp.2d at 995.  Collateral estoppel applies not only to issues relating to the parties' claims, but also to issues relating to the Court's jurisdiction.  See Jones v. Law Firm of Hill and Ponton, 141 F. Supp.2d 1349, 1356 (M.D. Fla. 2001) ("Collateral estoppel or issue preclusion applies to jurisdictional issues, as well as to other issues.")

In this case, all of the collateral estoppel elements are met.

***First***, the issue sought to be precluded is identical to the issue previously decided by this Court in Kutten I.  Plaintiff Kutten is attempting to exercise diversity jurisdiction in this Court based on the allegation that her damages meet the amount in controversy requirement.  See Amended Complaint, ¶¶13-14.  This is the very same issue that was addressed in Kutten I in which the Court found that Plaintiff Kutten could not produce a "scintilla of evidence" to show that she met the amount in controversy requirement.  Kutten, 2006 WL 1520588, at *2.

*Second,* the prior action, Kutten I, resulted in a final adjudication on the merits. The Court dismissed that case for lack of subject matter jurisdiction and no appeal was taken.

*Third,* Plaintiff Kutten is a plaintiff in this case and was a plaintiff in Kutten I.

*Fourth,* Plaintiff Kutten was given a full and fair opportunity to litigate the amount in controversy issue in Kutten I, including conducting discovery on the issue.

"[T]he purposes of collateral estoppel are to relieve parties of the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." Am. Legion Dept. of Missouri, Inc. v. Hanover Ins. Co., 286 B.R. 729, 742 (E.D. Mo. 2002) (Medler, J.) (citations and quotations omitted). Plaintiff Kutten is attempting to thwart these purposes by attempting to relitigate the issue of whether her claims meet the amount in controversy requirement. Accordingly, the Court should find that Plaintiff Kutten is collaterally estopped from litigating that issue a second time and dismiss her individual claims for lack of subject matter jurisdiction as it did in Kutten I.

## CONCLUSION

Based on the foregoing, Defendants Bank of America, N.A. and Bank of America Corporation request that the Court dismiss the Amended Complaint. Further, having watched while Defendants incurred the unnecessary expense of briefing and re-briefing issues in response to Plaintiffs' many complaints, repeatedly filing and then withdrawing the same claims, and after many dismissals, Plaintiffs' claims here should be dismissed with prejudice.

- 14 -

                                           Respectfully submitted,

                                           BRYAN CAVE LLP

                                           By: /s/ Jeffrey S. Russell
                                           Jeffrey S. Russell #4232
                                           Darci F. Madden #95927
                                           One Metropolitan Square
                                           211 N. Broadway, Suite 3600
                                           St. Louis, MO  63102
                                           Telephone: 314.259.2000
                                           Facsimile:  314.259.2020

                                           Gregory B. Jordan
                                           Mary J. Hackett
                                           Christopher J. Soller
                                           Sharon L. Rusnak
                                           REED SMITH LLP
                                           435 Sixth Avenue
                                           Pittsburgh, PA 15219
                                           Telephone: 412.288.3131
                                           Facsimile:  412.288.3063

DATED: February 26, 2007               Attorneys for Defendants Bank of America,
                                           N.A. and Bank of America Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served this 26th day of February, 2007 upon the following counsel of record by the Court's electronic filing system:

Steven M. Hamburg, Esq.
Holly M. McIntyre, Esq.
Summers, Compton, Wells & Hamburg, P.C.
8909 Ladue Road
St. Louis, MO  63124

Richard D. Greenfield, Esq.
Greenfield & Goodman LLC
7426 Tour Drive
Easton, MD  21601

Amy Boomhouwer, Esq.
Gancedo & Nieves LLP
144 W. Colorado Boulevard
Pasadena, CA  91105

Gregory Fishbein, Esq.
Lockridge, Grindal, Nauen, PLLP
Suite 2200
100 Washington Avenue
Minneapolis, MN 55401

/s/ Jeffrey S. Russell
Counsel for Defendants Bank of America,
N.A. and Bank of America Corporation