UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

Ellen Jane Kutten, individually and on
behalf of her daughters; and Mary Ann
Arnold and Elsie Mahler Scharff, on
behalf of themselves and all others
similarly situated;

Civ. File No. 06-0937 (PAM)

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

Bank of America, N.A. and Bank of
America Corporation,

Defendants.

This matter is before the Court on Defendants' Motion to Dismiss.[1]  For the reasons

that follow, the Court grants in part and denies in part the Motion.

**BACKGROUND**

Plaintiffs are present or former beneficiaries of fiduciary accounts for which

Defendant Bank of America, N.A. ("Bank") served as corporate trustee.[2]  Plaintiff Ellen Jane

Kutten brings claims on behalf of herself and her two daughters.  Plaintiffs Mary Ann Arnold

and Elsie Mahler Scharff bring class claims on behalf of themselves and the following class:

All beneficiaries, owners, beneficial owners, or principals of trusts, accounts
or other entities for which the Bank or any of its parents, subsidiaries,
affiliates, predecessors, successors, or assigns acted as a trustee, fiduciary, or

---

[1] This Court is assigned to this case pursuant to 28 U.S.C. § 294(c).

[2] Defendant Bank of America Corporation is a financial holding company with a number of
subsidiaries, including the Bank.

agent and that were directly or indirectly invested in Nations Funds mutual funds at any time from September 8, 1998 to the present.[3]

(Am. Compl. ¶ 61.)

## A.     Factual Allegations Supporting Claims

The Amended Complaint alleges that Defendants engaged in "pervasive self-dealing" by converting trust assets to Columbia Funds (f/k/a Nations Funds), mutual funds that were controlled by the Bank's affiliates and subsidiaries.  (Id. ¶ 2.)  The conversions purportedly "allowed the Bank to funnel the assets in its captive fiduciary accounts into shares of the Nations Funds [and] were carried out on a wholesale basis without giving consideration as to whether the Conversions were prudent and in the beneficiaries' best interests."  (Id. ¶ 31.)

The Amended Complaint alleges that the conversions negatively affected Plaintiffs in several ways.  First, the conversions allowed the Bank to generate higher fees and increased expenses.  (Id. ¶¶ 33, 38, 46, 48, 52-53, 55.)  Plaintiffs acknowledge that the Bank issued notices about the fees and expenses; however, they assert that the notices were misleading so that class members "had no practical way of knowing or understanding how their individual accounts would be affected either by the conversion or the investments of the assets therein in Nations Funds or that the Bank was to receive substantial benefits therefrom."  (Id. ¶¶ 46-47; see also id. ¶ 52 ("The beneficiaries were left on their own to

---

[3] The class is divided into three proposed sub-classes:  (1) a sub-class consisting of members of the class whose fiduciary accounts originated in and/or involved beneficiaries residing in California (such as Arnold); (2) a sub-class consisting of members of the class whose accounts originated in and/or involved beneficiaries residing in Missouri (such as Scharff); and (3) a sub-class consisting of all class members who, within the class period, have had their fiduciary accounts subject to one or more conversions.  (Am. Compl. ¶ 62.)

figure out, if they could, whether their accounts would pay more for the services related to the Nations Funds investments than they had paid pre-coversion for the pre-existing investments.").)  Plaintiffs further assert that they "have never received a 'straight' or any answers to their questions with respect thereto and have received misleading or deceptive information as to the impact of such investments upon them and their fiduciary accounts." (Id. ¶ 50.) Thus, "it was impossible for co-fiduciaries, beneficiaries, and others . . . to understand and know the true costs of ownership of Nations Funds to the fiduciary accounts."  (Id.)

Second, the conversions purportedly allowed the Bank to use its own proprietary funds rather than less expensive and well-proven competitive funds.  (Id. ¶¶ 38-41, 54.)  In addition, Defendants purportedly failed to follow government guidelines on avoiding a breach of fiduciary duties when using proprietary mutual funds.  (Id.  ¶¶ 36-40.)  Plaintiffs allege that Defendants falsely touted "the so-called 'benefits' of the conversions" and "coerced" the authorization of the conversion.  (Id. ¶¶ 42-44.)

Third, the conversions purportedly curtailed the individualized service previously provided to the fiduciary accounts.  (Id. ¶¶ 22, 33.)  As a consequence, "the 'customized recommendations' and 'wealth management expertise' promised by the Bank in its advertisements are fictions and have been fictions since" the Bank acquired numerous other financial institutions throughout the United States.  (Id. ¶ 24.)  Despite the lack of individual service, the Bank assessed numerous fees.  (Id. ¶ 55.)

Finally, the Amended Complaint alleges:

> In connection with the transfer of fiduciary responsibilities, and in violation of its fiduciary duty, the Bank did not disclose all material facts, including that the transfer would have a material adverse effect on such interested parties . . . that they had a right to object to the transfer and, <u>inter alia</u>, obtain a replacement fiduciary. . . . Plaintiffs believe and therefore allege that the Bank failed to provide such notice in each of the other instances where the fiduciary responsibilities of an Acquired Bank were taken over by the Bank or one of its predecessors.  As such, all similarly affected beneficiaries were wrongly denied notice and the right to object to a transfer of fiduciary responsibilities to the Bank.

(<u>Id.</u> ¶¶ 27-28.)

## B.    Counts in the Amended Complaint

Counts 1 through 3 of the Amended Complaint assert claims for breach of fiduciary duty and for punitive damages.  Specifically, Count 1 alleges that the Bank failed to consider the best interests of fiduciary account beneficiaries when it transferred fiduciary account assets to Nations Funds.  Instead, the Bank purportedly was motivated by its own desire to generate fees and reduce operating expenses.  Thus, the Bank allegedly breached its duty of loyalty to Plaintiffs.  (<u>Id.</u> ¶¶ 70-73.)  Count 2 asserts a claim for punitive damages based on Defendants "deliberately and knowingly" breaching fiduciary duties by "self-dealing in the face of obvious conflicts of interest."  (<u>Id.</u> ¶ 74.)  Count 3 asserts that Defendants and their affiliates devised a corporate plan to reduce operating expenses and increase profits by converting fiduciary account assets to Nations Funds "without regard to whether such investments were prudent and in the best interests of Plaintiffs and other beneficiaries of fiduciary accounts."  (<u>Id.</u> ¶¶ 77-79.)

4

Count 4 alleges that Defendants were unjustly enriched by receiving fees and profits from the fiduciary accounts at the expense of the fiduciary account beneficiaries "under guise of allegedly providing more services." (Id. ¶¶ 83-85.) Counts 5 and 6 assert breach of contract claims based on alleged promises to provide individualized investment management services to the fiduciary accounts. (Id. ¶¶ 88-89, 93.) Count 6 also alleges that Defendants failed to give the fiduciary account beneficiaries notice that the acquisition of predecessor banks would materially change the relationship or provide the beneficiaries with the opportunity to seek a replacement fiduciary. (Id. ¶ 95.)

Counts 7 through 10 assert violations of various California state laws. In Counts 7 and 8, Arnold seeks relief on behalf of the California sub-class under the California Probate Code for alleged self-dealing in violation of the fiduciary duties of loyalty and trust. (Id. ¶¶ 97-115.) In Count 9, Kutten and Arnold assert violations of the California Business and Professions Code based on alleged deceptive business practices the Bank employed in self-dealing transactions. (Id. ¶¶ 116-19.) In Count 10, Arnold and Kutten allege that the Bank violated Section 16045 of the California Probate Code by failing to exercise reasonable care. (Id. ¶¶ 122-23.) In particular, they contend that the Bank failed to make prudent investment and management decisions with respect to the fiduciary accounts by failing to make individualized determinations and by causing the accounts to incur excessive expenses. (Id. ¶¶ 124-25.)

In Counts 11 and 12, Scharff asserts a claim on behalf of the Missouri sub-class for violations of the Missouri Prudent Investor Act, as well as Missouri common law. (Id. ¶¶ 127-28, 138-39.) Specifically, she alleges that the Bank breached its duty of loyalty and

its duty to exercise reasonable care in investment management decisions by engaging in self-dealing transactions.  (<u>Id.</u> ¶¶ 128-36, 139-44.)

In Counts 13 through 18, Kutten asserts individual claims for breach of fiduciary duty, breach of contract, unjust enrichment, and violations of the Missouri Prudent Investor Act. (<u>Id.</u> ¶¶ 146-78.)

**DISCUSSION**

**A.     Standard of Review**

A complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all factual allegations as true and liberally construes the complaint in the light most favorable to the plaintiff.  <u>See</u> <u>id.</u> at 1964-65.

**B.     Class Claims**

Defendants argue that the Securities Litigation Uniform Standards Act of 1998 (SLUSA) preempts the state-law class claims in the Amended Complaint.  SLUSA requires preemption and dismissal of certain class actions that allege false statements or omissions of material fact made in connection with the purchase or sale of certain securities.  15 U.S.C. § 78bb(f)(1); <u>Dudek v. Prudential Sec., Inc.</u>, 295 F.3d 875, 879 (8th Cir. 2002).  Dismissal of an action is appropriate when: (1) the action is a "covered class action" under SLUSA; (2) the action purports to be based on state law; (3) the defendant is alleged to have misrepresented or omitted a material fact; and (4) the defendant's alleged misrepresentation or omission of a material fact was made "in connection with the purchase or sale of a covered

security." Dudek, 295 F.3d at 879. The parties agree that this action constitutes a "covered class action" and alleges state law claims. Thus, only the third and fourth elements are at issue.

      1.     Misrepresentations or Omissions

Defendants argue that the essence of the Amended Complaint is based on misrepresentations and omissions made to Plaintiffs in connection with the purchase or sale of a covered security. Plaintiffs respond that the allegations of misrepresentations and omissions are merely ancillary to their state law claims.

SLUSA is "an express exception to the well-pleaded complaint rule." Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 304 (3d Cir. 2005). Even where plaintiffs attempt to conceal claims based on the misrepresentation or omission of material facts with state law labels, courts disregard such labels and dismiss the claims as preempted by SLUSA. See, e.g., Prof'l Mgmt. Assocs., Inc. Employees' Profit Sharing Plan v. KPMG LLP, 335 F.3d 800, 803 (8th Cir. 2003) (negligence claim preempted by SLUSA because it was "essentially a securities fraud claim"); Dudek, 295 F.3d at 879 (breach of fiduciary duty and unjust enrichment claims preempted by SLUSA because essence of complaint was that defendants misstated or omitted material facts in connection with a security's purchase and sale). Thus, the Court must focus on the substance of the allegations and be wary of efforts to circumvent SLUSA through artful pleading. See Dudek, 295 F.3d at 879-80; see also Rowinski, 398 F.3d at 304-05 (determining whether a reasonable reading of the complaint reveals allegations within SLUSA's purview); In re Salomon Smith Barney Mut. Fund Fees Litig., 441 F. Supp. 2d 579, 602 (S.D.N.Y. 2006) (dismissing breach of fiduciary duty claims

and finding plaintiffs' attempt to evade SLUSA unavailing); Felton v. Morgan Stanley Dean

Witter & Co., 429 F. Supp. 2d 684, 692 (S.D.N.Y. 2006) (looking "beyond the face of the

complaint to analyze the substance of the allegations made").  When the gravamen of the

complaint involves an untrue statement or substantive omission of a material fact, and when

that conduct coincides with a transaction involving a covered security, SLUSA mandates

dismissal.  Dudek, 295 F.3d at 879-80; see also Prof'l Mgmt. Assocs., Inc. Employees' Profit

Sharing Plan, 335 F.3d at 802 (applying SLUSA preemption to implicit allegations of

misrepresentations and omissions in connection with securities purchases).

    In this case, the class claims are framed as breach of fiduciary duty, unjust enrichment,

breach of contract, and violations of state statutes.  Nonetheless, the crux of the Amended

Complaint is that Defendants engaged in self-dealing transactions and misrepresented or

omitted material facts relating to those transactions.  (See, e.g., Am. Compl. ¶¶ 24, 27-28, 42-

44, 46-47, 50, 52.)  Indeed, Plaintiffs emphasize that "the breach of the fiduciary duty to

disclose diversion of trust assets or facts relevant to whether the bank has committed multiple

breaches of duty is what is at issue in this case."  (Pls.' Mem. Opp'n Mot. Dismiss at 11.)

Moreover, at the hearing on this Motion, Plaintiffs made clear that this action challenges

Defendants' failure to disclose:

> The Bank [transferred fiduciary account assets to Nations Funds] under the
> guise of providing individual and customized management of assets, but in fact
> were a cloak for self-dealing and engaging in conflict of interest transactions.
> . . . And we can't lose sight of the fact that that's what this case is all about.
> It's a breach of fiduciary duty case, and that duty includes disclosing to
> beneficiaries certain information.
>
> . . .

And certainly one of the components is . . . a duty to disclose, a duty to be candid, a duty to be honest with your beneficiaries, to let your beneficiaries have the straight scoop with respect to the handling of their assets.  It's a very, very high duty.  And we allege that . . . they have a duty under state common law, a fiduciary duty, to be candid with their beneficiaries, to disclose to their beneficiaries.

. . .

And our complaint I think clearly indicates that what they did to breach it in this case was engage in self-dealing.  They did—they were not candid with us.  They did not tell us that, you know, we can get you from common trust funds into mutual funds but you're going to be paying more or it's going to cost you more.  Okay, we're going to be making money at your expense.  That I think is something that a fiduciary should tell a beneficiary.  And we're talking about billions of dollars being managed by this bank and failing to tell people we're going to convert common trust funds in the billions of dollars  . . . and it's going to affect your income.  It's going to affect your yield.  Why wouldn't a fiduciary have the responsibility to disclose that to a beneficiary? . . . That's the failing to disclose.  That's the failing to be candid.  That's the failing to be honest.  That's what we allege the bank failed to do repeatedly in the context of its wholesale conversion of common trust funds into their own mutual funds, and it's what the bank did when they streamlined the provision of fiduciary services to their customers.

(Aug. 1, 2007 Hr'g Tr. 25-26, 36-39.)

Thus, Plaintiffs' effort to distinguish this case from Siepel et al. v. Bank of America et al., 239 F.R.D. 558 (E.D. Mo. 2006) is unavailing.  Siepel is nearly identical to this case. As in this case, current and former trust beneficiaries asserted various state law claims based on the same purportedly wrongful conduct: the transfer of fiduciary account assets into proprietary mutual funds without considering other alternatives, the failure to disclose the conflict of interest and the resulting fees, and misrepresentations that the defendant provided individualized account services.  Id. at 560.  Because the essence of the Siepel complaint was that the defendants made misrepresentations and omissions of material facts regarding the

9

transfer of fiduciary account assets to the proprietary mutual fund, the Court held that SLUSA preempted the state law claims.  Id. at 567-68.

Likewise, this case is similar to Felton; Spencer v. Wachovia Bank, N.A., No. 05-81016, 2006 WL 348043 (S.D. Fla. May 10, 2006); Beckett v. Mellon Investor Services, LLC, No. 06-5245, 2006 WL 3249189, at *3 (W.D. Wash. Nov. 8, 2006);  Broadhead Limited Partnership v. Goldman, Sachs & Co., No. 06-009, 2007 WL 951623 (E.D. Tex. Mar. 26, 2007);  Dommert v. Raymond James Financial Services et al., No. 06-102, 2007 WL 1018234 (E.D. Tex. Mar. 29, 2007); and Rabin v. JPMorgan Chase Bank, N.A., No. 06-5454, 2007 WL 2295795 (N.D. Ill. Aug. 3, 2007).  In all these cases, the plaintiffs alleged breaches of fiduciary duties, breaches of contract, unjust enrichment, and state statutory violations based on alleged failures to disclose.  Nonetheless, the courts uniformly held that SLUSA preempted the state law claims.

In Felton, the plaintiffs alleged that two agreements required the defendant to abide by the rules and customs of the National Association of Securities Dealers, New York Stock Exchange, and other self-regulatory organizations.  429 F. Supp. 2d at 687.  They further claimed that the defendant breached the agreements by failing to provide objective research and recommendations and instead provided self-serving, biased information.  Id. at 687-88. Although the complaint alleged only a breach of contract claim, the court held that SLUSA preemption applied:

> I conclude without difficulty that Plaintiffs' claim is a securities fraud wolf dressed up in a breach of contract sheep's clothing. The gravamen of the Amended Complaint . . .  is that conflicts of interest were created . . . , conflicts "which were undisclosed to Plaintiffs and the class members. . . . While Morgan Stanley customers believed that they were paying for and

10

> receiving informed and objective investment advice, they actually received recommendations based on Morgan Stanley's existing or desired investment banking deals." Plaintiffs describe this conduct as a breach by Morgan Stanley "of the standardized contracts with the Plaintiffs and Class members," and so it may have been, but it is also a quintessential example of a fraudulent omission of a material fact under the federal securities laws.

Id. at 693.

In Spencer, the plaintiff alleged that the defendant engaged in self-dealing by investing trust assets in affiliated mutual funds without disclosing that the funds were affiliated with the defendant and by charging undisclosed advisory and management fees against the trust assets. 2006 WL 348043, at *1. Attempting to avoid SLUSA preemption, the plaintiff argued that her claim was for breach of fiduciary duty and was not predicated on misrepresentations or omissions. In rejecting the argument, the Spencer court noted that the complaint was rife with claims of misrepresentations and dismissed the action based on SLUSA preemption. Id. at *4.

In Beckett, the plaintiff learned that the defendant had assessed fees for a requested stock sale and sued for breach of contract, breach of fiduciary duties, unjust enrichment, and state consumer protection law violations. 2006 WL 3249189, at *1. Notably, the complaint contained "no explicit reference to any fraudulent activity such as a misrepresentation or omission of material fact." Id. at *3. Nonetheless, the court ruled:

> Any reasonable reading of [the] complaint evidences allegations of misrepresentation or omission of material facts in connection of the purchase or sale of securities. The allegation of charging of undisclosed fees and paying Plaintiff share proceeds below prevailing market prices is an allegation of a misrepresentation or omission of material fact concerning the terms of the sale of stocks.

Id. at *4. Thus, the court ruled that SLUSA preempted the state law class claims.

11

In Broadhead, the plaintiff alleged that the defendant breached fiduciary duties by failing to disclose all fees and expenses charged to investors. 2007 WL 951623, at *1. As in this case, the defendant had discretionary authority over the plaintiff's account and had a fiduciary duty to disclose fees earned in connection with the plaintiff's transactions. Id. The plaintiff asserted various state law claims, including breach of fiduciary duty, breach of contract, and unjust enrichment. Id. at *2. Nonetheless, the court disregarded the "labels assigned to the causes of action" and determined that complained-of conduct was the failure to disclose fees associated with bond purchases. Id. at *5. SLUSA preemption therefore applied. Id.

Dommert also involved a defendant who had complete discretionary authority over the plaintiff's funds. 2007 WL 1018234, at *2. The plaintiff alleged that the defendant breached an investment management service agreement and its fiduciary duties by failing to act in her best interest and by failing to disclose material information about fees assessed against her. Id. at *2-*3. Recognizing that courts must look at the allegations as a whole, the court noted that the complaint made "specific references to omissions and failures to disclose" and ruled that the claims were "clearly based upon alleged fraudulent omissions." Id. at *7-*8. It further explained:

> The core basis of her claims is that the Defendants failed to disclose important information to the Plaintiffs, including material details about fees and financial gain retained by Defendant to the Plaintiffs, luring investors into paying excessive fees. . . . Whether these alleged failures to disclose are couched in the terms of a fiduciary duty or claims of fraud, they are, in their simplest form, allegations that the Defendants "omitted" important information from their disclosures to Plaintiffs under the Agreement. . . . No matter how she legally characterizes her claims, material misrepresentations and omissions serve as the factual predicate for Plaintiff's state law claims.

Id. at *8.

In Rabin, the plaintiffs were beneficiaries of a trust maintained by the defendant. 2007 WL 2295795, at *1.   As in this case, the plaintiffs alleged that the defendant unilaterally invested fiduciary account assets into its proprietary mutual fund without regard to whether such investments were in the best interests of the beneficiaries.  Id.  The plaintiffs further contended that the defendant generated undue profits by charging excessive fees.  Id. They maintained that the breach of fiduciary duty and unjust enrichment claims were "merely ancillary to and not predicated upon" material misrepresentations and omissions.  Id. at *6. The court rejected that argument, reasoning that attempts to disguise securities fraud claims as breach of fiduciary duty claims are "not enough to evade preclusion of those claims under SLUSA."  Id. (citing Potter v. Janus Inv., 483 F. Supp. 2d 692, 702 (N.D. Ill. 2007).  Thus, the court analyzed the substance of the allegations and found that misrepresentations and omissions of material facts relating to the purchase of mutual fund shares were "the heart of the Amended Complaint."  Id.

The analyses in all these cases apply in this action.  Plaintiffs purposefully distance themselves from any fraud claims and cast their claims as various state law claims. Nonetheless, as Plaintiffs' counsel recognized at oral argument, the essence of the Amended Complaint is that Defendants misrepresented and omitted material facts relating to the transfer of assets to Nations Funds, such as conflicts of interest and expenses related to the transfer.  These allegations are incorporated into the state law claims by reference. See Prof'l Mgmt. Assocs., Inc., 335 F.3d at 803; Rowinski, 398 F.3d at 300.  Moreover, each state law claim hinges on harm caused by Defendants' misrepresentations and omissions of material

facts regarding the purchase of Nations Funds.  Thus, the attempt to cast their allegations as state law claims is unavailing.

       2.    <u>"In Connection with the Purchase or Sale of a Covered Security"</u>

Both parties are well aware of how this Court has interpreted the "in connection with" requirement in light of <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit</u>, 547 U.S. 71 (2006).  <u>See Siepel</u>, 239 F.R.D. at 568-69.  Thus, the Court will add only that several recent cases have paralleled the analysis in <u>Siepel</u>.  <u>See U.S. Mortgage, Inc. v. Saxton</u>, ___ F.3d ___, 2007 WL 2027370, at *5-*8 (9th Cir. July 13, 2007) (rejecting the argument that SLUSA was inapplicable because the plaintiffs did not purchase any security in response to the misrepresentation and therefore did not allege a fraud in connection with the purchase or sale of a security); <u>Disher v. Citigroup Global Mkts., Inc.</u>, 487 F. Supp. 2d 1009, 1018 (S.D. Ill. 2007) (finding that the plaintiffs lacked standing to sue under federal securities law did not take the claims out of the scope of SLUSA preemption); <u>Fisher v. Kanas</u>, 487 F. Supp. 2d 270, 277 (E.D.N.Y. 2007) (noting that <u>Dabit</u> instructs courts to interpret SLUSA broadly to include "any misrepresentation touching upon the purchase or sale of securities"); <u>Rubery v. Radian Group, Inc.</u>, No. 07-1068, 2007 WL 1575211, at *2 (E.D. Pa. May 31, 2007) (refusing to permit "manipulative tactics" to avoid SLUSA preemption through artful pleading and holding that an exchange as part of a merger was sufficient to satisfy the "in connection with" requirement); <u>Dommert</u>, 2007 WL 1018234, at *9-*12 (noting that the purpose of the agreement was to manage the plaintiff's assets, which encompassed the purchase and sale of stock and therefore met the "in connection with" requirement); <u>Rabin</u>, 2007 WL 2295795, at *7 (finding the "in connection with" requirement met even though the

plaintiffs did not purchase, sell, or hold shares because the plaintiffs alleged that defendant engaged in a scheme to invest proceeds from the beneficiaries' accounts into a proprietary mutual fund).

Plaintiffs allege that Defendants misled fiduciary account beneficiaries about Nations Funds and the fees associated with transferring fiduciary account assets to the funds. The alleged deception was premised on the purchase of Nations Funds, and Plaintiffs' alleged injury was linked directly to the forced purchase of Nations Funds with fiduciary account assets. Thus, SLUSA preempts the state law class action claims. The Court grants the Motion to Dismiss on all class claims.

## C.      Kutten's Individual Claims

Kutten argues that her individual state law claims remain despite dismissal of the class action claims. She relies on diversity jurisdiction under 28 U.S.C. § 1332(a). Defendants advance three arguments in favor of dismissing Kutten's individual claims: (1) SLUSA requires dismissal of the individual claims; (2) Kutten is collaterally estopped from arguing that she meets the amount-in-controversy requirement under § 1332(a); and (3) Kutten has failed to present sufficient evidence to meet the amount-in-controversy requirement.

### 1.      SLUSA Preemption

Defendants argue that SLUSA preemption requires dismissal of Kutten's individual claims. SLUSA mandates dismissal of an entire class action when at least one of the class action claims is preempted. See 15 U.S.C. § 78bb(f)(1); see also In re Lord Abbett Mut. Funds Fee Litig., 463 F. Supp. 2d 505, 511-15 (D. N.J. 2006). However, SLUSA preemption applies only to class actions. This case is unusual because it includes both class action claims

and individual claims.  SLUSA preempts the state law class action claims, but the individual claims survive.

      2.      <u>Collateral Estoppel</u>

Defendants argue that Kutten is collaterally estopped from asserting that her individual claims meet the amount-in-controversy requirement under§ 1332(a).  Kutten argues that collateral estoppel does not apply because the issue of whether her damages exceed the amount-in-controversy requirement was not an issue of ultimate fact previously determined by a valid and final judgment.

"The underlying goal of issue preclusion, also known as collateral estoppel, is to promote judicial economy and finality in litigation." <u>Allstate Ins. Co. v. Blount</u>, 491 F.3d 903, 909 (8th Cir. 2007) (citation omitted).  To determine whether to apply collateral estoppel, the Court considers the following four factors:

> (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

<u>Id.</u> (citation omitted).  Although dismissal without prejudice does not result in claim preclusion, "an <u>issue</u> actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties." <u>Pohlmann v. Bil-Jax, Inc.</u>, 176 F.3d 1110, 1112 (8th Cir. 1999).  Thus, courts have barred parties from re-litigating the issue of subject matter jurisdiction, even where the previous action was dismissed without prejudice.  <u>Id.</u> (citing <u>Healy v. Atchison, Topeka & Santa Fe R.R.</u>, 287 S.W.2d 813, 815 (Mo. 1956); <u>see</u>

16

also Oglala Sioux Tribe of Pine Ridge Indian Reservation v. Homestake Mining Co., 722

F.2d 1407, 1411 (8th Cir. 1983) ("Dismissal of a suit for lack of federal subject matter

jurisdiction precludes re-litigation of the same issue of subject matter jurisdiction in a second

federal suit on the same claim."); Sexton v. Jenkins & Assocs., Inc., 152 S.W.3d 270, 273

(Mo. 2004) (although dismissal of first action was without prejudice, the first action

adjudicated the issue of subject matter jurisdiction; thus, the second action was precluded by

the first action, pursuant to collateral estoppel).

     Nonetheless, the Court finds that collateral estoppel should not apply in the unusual

circumstances of this case.  Kutten previously asserted individual claims against Defendants

in Kutten et al. v. Bank of America, N.A. et al., No. 04-0244 (Kutten I).[4]  In May 2006, the

Court found that Kutten failed "to submit a scintilla of evidence" required to establish

diversity jurisdiction under § 1332(a).  Kutten I, 2006 WL 1520588, at *2 (E.D. Mo. May

26, 2006).  The Court further noted that none of the documents on which Plaintiffs relied was

included in the record.  Id.  The Court does not condone the inefficiency and ineffectiveness

of Plaintiffs' counsel relating to this issue.   If Kutten had the proof to meet the amount-in-

controversy requirement in Kutten I, she should have presented it then.  Nonetheless, the

Court dismissed the action without prejudice to allow Plaintiffs to cure the jurisdictional

---

[4]  Kutten commenced Kutten I on behalf of herself and her daughters, as well as on behalf
of the putative class and a Missouri sub-class.  As in this case, she asserted that Defendants
had breached various fiduciary and contractual duties with respect to the administration of
trust accounts.  Thereafter, the complaint was amended to add Plaintiffs Mary Ann Arnold
and Elsie Mahler Scharff and to drop Ellen Jane Kutten as a class representative.  The
amended complaint asserted fifteen claims, including breach of fiduciary duty, breach of
contract, unjust enrichment, and violations of various California and Missouri statutes.

deficiencies in <u>Kutten I</u> and to name additional plaintiffs.[5]  Thus, the Court finds that collateral estoppel does not apply here because the Court provided Kutten another opportunity to establish subject matter jurisdiction.[6]

     3.    <u>Sufficiency of the Evidence</u>

Defendants also argue that Kutten fails to present sufficient evidence to meet the amount-in-controversy requirement.  When determining the amount in controversy, "a complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount."  <u>Capitol Indem. Corp. v. 1405 Assocs., Inc.</u>, 340 F.3d 547, 549 (8th Cir. 2003) (citation omitted).  Because Defendants challenge the allegations as to the amount of controversy, Kutten must establish by a preponderance of the evidence that she satisfies the amount-in-controversy requirement.  <u>Rasmussen v. State Farm Mut. Auto. Ins. Co.</u>, 410 F.3d 1029, 1031 (8th Cir. 2005) (citation omitted).

---

[5] The additional named plaintiffs were Michael R. Medler, Jeffrey P. Medler, and John F. Medler, Jr.  In May 2007, the Court dismissed all claims by the Medlers based on a joint stipulation.

[6] The Court dismissed the action without prejudice because Plaintiffs claimed they could establish subject matter jurisdiction by asserting federal law claims.  The initial Complaint asserted six federal securities law claims, as well as claims of breach of fiduciary duty, aiding and abetting, unjust enrichment, and violations of various California and Missouri statutes.  In response to a motion to dismiss, the plaintiffs filed the Amended Complaint, which withdrew the federal securities law claims and added other state law claims.  Jurisdiction was based on the Class Action Fairness Act of 2005, <u>see</u> 28 U.S.C. § 1332(d), and supplemental jurisdiction under 28 U.S.C. § 1367.  (Am. Compl. ¶ 13.)  However, the Amended Complaint also alleges "Kutten has sustained damages in excess of $75,000," thereby implicitly invoking diversity jurisdiction under 28 U.S.C. § 1332(a).  (<u>Id.</u>)

First, it is noteworthy that Kutten attempts to bear her burden in a terse footnote, merely proclaiming that her damages exceed the amount-in-controversy requirement.  (Pls.' Mem. Opp'n Mot. Dismiss at 33 n.14.)  Nowhere does Kutten specifically identify the total amount she seeks in damages.  Second, much of her declaration and exhibits have no bearing on the amount in controversy.  For example, the first sixteen paragraphs and approximately twenty exhibits relate to her dissatisfaction with Defendants' conduct but have no bearing on the amount-in-controversy requirement.  (Kutten Decl. ¶¶ 1-16, Exs. A-L, N-O.)

Paragraph 17 of her declaration, as well as exhibits attached, appear to support her damages claim.  However, there are several flaws and inconsistencies in this evidence.  For example, in Paragraph 17(a), Kutten explains that she incurred $6,600 in attorneys' fees (see id. ¶ 17(a), Ex. P.) but does not explain why she is statutorily entitled to those fees.  As the Court explained in Kutten I, "only statutory attorney fees count toward the jurisdictional minimum calculation."  2006 WL 1520588, at *4 (citing Rasmussen, 410 F.3d at 1031).  Likewise, the Court already ruled that Kutten failed to meet the standard for punitive damages, see id. at *2-*3, which Kutten relies on in Paragraph 17(o).  (Kutten Decl. ¶ 17(o).)

In Paragraph 17(b), Kutten calculates fees paid to the Bank during certain periods, but the underlying exhibit does not support her calculation.  (Id. ¶ 17(b), Ex. Q.)  Kutten also relies on a morass of account statements but does not pinpoint any specific area of reference.  (Id. Ex. EE.) The Court will not sift through the record to locate evidence to support her position.  See Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir.2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments"); Nw. Nat'l Ins. Co. v. Baltes, 15 F.3d 660, 662-

63 (7th Cir.1994) ("District judges are not archaeologists."); United States v. Dunkel, 927

F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs");

Nicholas Acoustics & Specialty Co. v. H & M Constr. Co., Inc., 695 F.2d 839, 846-47 (5th

Cir.1983) ("Judges are not ferrets!").

In Paragraphs 17(d) and 17(e), Kutten claims to have suffered losses in 2003 but again

cites to a mass of account statements dated 1999 through 2000—not 2003.  (Kutten Decl.

¶ 17(d)-(e), Ex. EE.)  In Paragraphs 17(f) through 17(h), she complains of losses in a Charles

Schwab brokerage account, which has no connection to the conduct alleged in the Amended

Complaint.  (Id. ¶¶ 17(f)-(h), Exs. U-W.)  In Paragraphs 17(i) and 17(k), she claims that the

Kutten trust accounts lost money due to Defendants' misconduct, but the document

supporting the claim shows that the accounts increased in value.  (Id. ¶¶ 17(i), (k), Ex. X.)

Similarly, in Paragraph 17(m), she claims that the investment in Nations Funds caused the

trust accounts to decline in value.  (Id. ¶ 17(m).)  However, the document on which she relies

shows that Nations Funds provided a gain—not a loss.  (Id. Ex. EE.)

However, some evidence supports a finding that the amount-in-controversy

requirement is met.  First, Kutten explains that the Kutten trust accounts lost approximately

$9,343 from October 17, 2003 to November 26, 2003, the period the Bank refused to sell

Nations Funds.  (Id. ¶ 17(c), Ex. R.)  Defendants present no evidence to refute this statement.

Second, Kutten calculates that the Bank charged her and her daughters more than $150,000

in fees, "none of which were earned by the Bank and all of which are recoverable as

damages."  (Id. ¶ 17(l); Ex. BB.)  Defendants contend that account statements show that one

of Kutten's daughters paid only $10,000—not $50,000 as claimed.  However, Defendants

do not challenge the remaining $100,000 in fees assessed.  Finally, Kutten calculates that the Kutten trust accounts paid $14,555 in fees relating to the investment in Nations Funds.  (Id. ¶ 17(j), Ex. Z.) Defendants do not challenge this calculation either.[7]  Based on this evidence, the Court cannot conclude with legal certainty that Kutten fails to meet the amount-in-controversy requirement under § 1332(a).[8]  The individual claims survive the Motion to Dismiss.

**CONCLUSION**

SLUSA preempts all state law class claims asserted in this action.  However, Kutten has established diversity jurisdiction over her individual claims.   Accordingly, **IT IS HEREBY ORDERED** that:

1.  Defendants' Motion to Dismiss the Amended Complaint (Docket No. 41) is **GRANTED in part** and **DENIED in part**; and

2.  Counts 1-12 of the Amended Complaint are **DISMISSED with prejudice**.

Dated: August 29, 2007

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge

---

[7] Defendants also argue that the Court should disregard Kutten's declaration altogether, contending that it contradicts her prior deposition testimony.  However, Kutten previously testified that she was unable to determine the damages she suffered and deferred to her expert witness.  Through the declaration, Kutten shows that she now has determined her damages.  Thus, her declaration is not inherently inconsistent with her prior deposition testimony.

[8] There is no dispute that Kutten meets the diversity-of-citizenship requirement under 28 U.S.C. § 1332(a)(1).